JOHN H. CORPREW v. GEIGY CHEMICAL CORPORATION AND GEIGY AGRICULTURAL CHEMICALS.

(Filed 11 October, 1967.)

**1. Pleadings § 12—**

Upon demurrer, the allegations of a complaint shall be liberally construed with a view to substantial justice between the parties, G.S. 1-151, and the demurrer will not be sustained unless the complaint is fatally and wholly defective.

**2. Same—**

A demurrer admits, for the purpose of testing the sufficiency of the pleadings, the truth of factual averments well stated, and all relevant

inferences of fact reasonably deducible therefrom, but it does not admit inferences or conclusions of law.

**3. Sales §§ 6, 8— Complaint held to state causes of action for negligence and breach of implied warranty, despite lack of privity between consumer and manufacturer.**

The complaint alleged that the plaintiff purchased from a retailer a chemical weed killer in its original, sealed container as manufactured by the defendants, that the only warning given by the defendants was a recommendation not to plant another crop of corn or small grain on the same land in the same year following initial use of the chemical, that, in reliance upon this warranty, plaintiff planted peanuts and soybeans upon land treated the previous year with the chemical and that the yield of the crops was greatly impaired as a result of the chemical's noxious qualities. *Held:* The complaint stated a cause of action both for negligence and for breach of implied warranty for fitness of use, notwithstanding the lack of privity of contract between the plaintiff and the defendant manufacturer.

**4. Sales § 6—**

The manufacturer of a chattel is under a duty to the ultimate purchaser, irrespective of contract, to use reasonable care in its manufacture, and when reasonable care so requires, to give adequate directions for its use, and he is liable to the purchaser for injury resulting to persons or property from a failure to perform this duty.

**5. Sales §§ 6, 8—**

An express warning by the manufacturer of a chemical weed killer that a subsequent crop should not be grown in the same year upon land treated with the chemical constitutes an unqualified warranty to the ultimate consumer that no injury would result to crops grown on the same land the following year, and the consumer may maintain an action against the manufacturer for breach of such warranty.

**6. Pleadings §§ 2, 18—**

In this action to recover damages resulting from the use of a chemical weed killer, plaintiff incorporated into a single cause of action allegations constituting an action for negligence as well as allegations constituting action for breach of warranty. *Held:* While demurrer was properly sustained on the ground of improper joinder of causes of action, G.S. 1-123, G.S. 1-127, the plaintiff should have been given leave to plead separately the two causes of action.

APPEAL by plaintiff from *Peel, J.,* January 1967 Regular Session of PERQUIMANS.

This is a civil action instituted by plaintiff, a farmer, against Geigy Chemical Corporation, a foreign corporation domesticated in and doing business in North Carolina, and Geigy Agricultural Chemicals, a division of Geigy Chemical Corporation, to recover a judgment for $10,000 because of damage to his peanut and soybean crops, which allegedly resulted from the application of Atrazine 20 G, a chemical weed killer manufactured by the defendants, which

he had used during the year 1964 on the same land upon which these crops were planted the following year, 1965, heard upon a demurrer to the complaint.

Plaintiff's complaint in substance, except when quoted, is as follows: At the times complained of, Daly Herring Company, with a place of business at Ahoskie, North Carolina, was a distributor of certain products manufactured and sold by the defendants, particularly a chemical weed killer known as Atrazine 20 G; that said product was sold by Daly Herring Company, a representative of the defendants, in the original containers of the defendants and packaged by defendants for ultimate sale to the consumer in said closed containers, said containers being in the form of bags and containing Atrazine 20 G in granular form and approximately fifty pounds per container. These containers showed Atrazine 20 G as being recommended as a weed killer for use in the growing of corn, in particular; and defendants had instructions regarding its use on the container. The only warning given by the defendants in the use of said product was that the manufacturer and original seller did not recommend that the crop of corn for which said product was used be followed the same year with another planting of corn or followed after its initial use by a crop or crops of small grain the same year. On or about the ...... day of April, 1964, plaintiff purchased through J. F. Hollowell & Son, Inc., Winfall, North Carolina, a quantity of said Atrazine 20 G manufactured by defendants for use on his 1964 crop of corn; that the said J. F. Hollowell & Son, Inc., had purchased the Atrazine 20 G it sold to plaintiff from and through defendants' distributor and representative, Daly Herring Company, and this Atrazine 20 G, until opened and used by the plaintiff, was in the original, closed containers of the manufacturer, the defendants. Plaintiff used and applied said Atrazine on his 1964 corn crop according to the directions of the defendants and in reliance upon their representations as advertised on the original containers. The lands upon which plaintiff grew his 1964 crop of corn, on which he had used the said Atrazine, were planted by plaintiff for the year 1965 in peanuts and soybeans. In the same year, plaintiff planted and cultivated peanuts and soybeans on other lands on which for the previous year the said Atrazine had not been used. Plaintiff's peanut and soybean crops in 1965 were planted, cultivated and harvested uniformly and according to good husbandry. The crops of peanuts and soybeans harvested for the year 1965 upon his lands upon which he had used Atrazine the previous year were far less in quantity and substantially lower in quality than his crops of peanuts and soybeans for said year grown on similar lands upon which said Atrazine had not been used. Plaintiff is in-

formed, believes and alleges that the reduction in quantity and quality of said peanuts and soybeans grown on the land upon which he had used Atrazine the previous year was due to the noxious and deleterious qualities and effect of said Atrazine.

Plaintiff is informed, believes and alleges that the defendants knew, or in the exercise of due care should have known, and should have warned the buying public, including plaintiff, of said potential bad effects from the use of Atrazine upon succeeding crops, other than corn and small grain, in ample time to have warned him in regard to his 1964 and 1965 crops; and negligently failed to give or make available to plaintiff this warning or notice.

"(P)laintiff is presently advised [that] defendants, because of the injurious effects of Atrazine upon succeeding crops, theoretically withdrew said Atrazine 20 G from the market in the Fall of 1963, but carelessly and negligently failed to physically and actually withdraw the same from the market, and carelessly and negligently permitted plaintiff or made it possible for plaintiff, in total ignorance of possible or probable injurious effects upon crops, to purchase the aforesaid Atrazine from defendants' distributor. . . . That, as plaintiff is informed, believes and alleges, the defendants in theory discontinued the sale of granular Atrazine in the Fall of 1963, but carelessly and negligently permitted said product to be available to the public and to purchasers, including the plaintiff, at the period of time when plaintiff in fact made and used his said purchase."

Defendants negligently failed to label the containers in which its product Atrazine was sold to the public, including the plaintiff, to the effect that it would be or might be noxious or detrimental to crops other than corn or small grain grown or planted the following year on land to which Atrazine had been applied; and negligently failed to put the ultimate consumer of said product, including the plaintiff, on notice that the product had been purportedly withdrawn by defendants from the market in the fall of 1963 because of its potentially detrimental effect upon successive crops; and negligently failed to withdraw from the market said product, including the shipment or shipments on hand at Daly Herring Company, prior to the time when plaintiff's immediate vendor, J. F. Hollowell & Son, Inc., purchased it, when defendants well knew that harmful effects from its use would or might result to succeeding crops; and that plaintiff, without such knowledge or information, was allowed to purchase and use said Atrazine without any warning whatsoever in respect thereto, other than a warning contained on the original container regarding a succeeding corn or small grain crop.

The notice, warning and instructions of the defendants as contained on the original package constituted a material representation

and warranty in its use by the ultimate purchaser that the product was not and would not be detrimental to subsequent crops of the nature of those planted by the plaintiff as aforesaid, and that there was an implied warranty by defendants to the plaintiff that said product was reasonably fit for use upon the lands and upon the crops planted and cultivated by plaintiff. Plaintiff relied upon said warranty in the purchase and use of said Atrazine 20 G, and was induced to purchase and use the same by virtue of said warranty, all to his great damage.

During the crop year of 1965, plaintiff planted 12 acres in peanuts, and also 44.5 acres in peanuts upon which 44.5 acres of land plaintiff had used Atrazine during the previous year on a corn crop, and in the same year plaintiff planted soybeans on 20 acres upon which plaintiff had used Atrazine the previous year on a corn crop, and because and by virtue of the noxious and deleterious effect of said Atrazine upon the soil the yield and quality of said crops in 1965 were greatly impaired.

Wherefore, plaintiff prayed that he recover from the defendants $10,000 in damages.

Defendants demurred to the complaint of the plaintiff upon two grounds as follows:

"1. There is improper joinder of causes of action. The plaintiff attempts to state more than one cause of action, including actions in tort and on contract in one complaint, without stating each purported cause of action separately, as required by Supreme Court Rule 20(2) and the decisions thereunder.

"2. The Complaint does not state facts sufficient to constitute a cause of action in that: (a) The plaintiff fails to state a cause of action on warranty, either expressed or implied, as the Complaint affirmatively shows there was and is no privity of contract as between the plaintiff and the defendants; and (b) the plaintiff fails to state a cause of action in tort as (1) the Complaint fails to allege a breach by the defendants of any legal duty owed to plaintiff as a member of the public having no contractual relationship with the defendants, (2) the allegations purporting to state a cause of action in tort are actually in the nature of warranty, for which no action will lie, and (3) the Complaint fails to allege that any act or omission by the defendants was a proximate cause of any damage sustained by the plaintiff."

The demurrer to the complaint was sustained upon each of the grounds asserted in the demurrer, the court finding that the com-

plaint contained allegations of two defective causes of action, and the court ordered the action to be dismissed.

From the judgment entered, plaintiff appeals to the Supreme Court.

*Hall & Hall by John H. Hall for plaintiff appellant.*

*Leroy, Wells, Shaw & Hornthal by Dewey W. Wells for defendant appellees.*

PARKER, C.J. Do the averments in the complaint disclose a cause of action? In determining the effects of its allegations, G.S. 1-151 requires "for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties." Defendants' demurrer admits, for the purpose of testing the sufficiency of the pleadings, the truth of factual averments well stated and all relevant inferences of fact reasonably deducible therefrom. It admits facts stated on information and belief as well as facts alleged on personal knowledge. *Reynolds v. Murph,* 241 N.C. 60, 84 S.E. 2d 273. A demurrer does not admit inferences or conclusions of law. 3 Strong, N. C. Index, Pleadings § 12. A complaint must be fatally and wholly defective before it will be rejected as insufficient. *Guerry v. Trust Co.,* 234 N.C. 644, 68 S.E. 2d 272; 3 Strong, *ibid.*

The responsibility of a contracting party to a third person with whom he has made no contract has a long history and has presented many perplexing problems. The first obstacle which arose is the fact that there has been no direct transaction between the plaintiff and the defendant which usually is expressed by saying that they are not in "privity" of contract. We are writing a court opinion and not an article in a law magazine or in a textbook. Anyone who desires to read in minute detail the recent developments in this field can see Professor William L. Prosser's article, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale L. J. 1099 (1960); Prosser, "The Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn. L. Rev. 791 (1966); Dillard and Harris, "Product Liability: Directions and the Duty to Warn," 41 Va. L. Rev. 145 (1955); Prosser, Law of Torts, 658-96 (3rd Ed. 1964), which is Ch. 19, "Liability of Contracting Parties to Third Persons."

The case of *Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng. Rep. 402 (Ex. 1842), laid down "horse and buggy" law for a "horse and buggy" age — the law that one furnishing chattels to another owes no duty of care to a third person with whom he is not in privity of contract. Such a rule does not conform to modern conditions.

Under modern marketing conditions a manufacturer places its goods upon the market in sealed containers, and the container without substantial change is sold to the ultimate purchaser in the condition in which it is placed by the manufacturer on the market for sale. By placing its goods upon the market, the manufacturer represents to the public that they are suitable and safe for use, and by packaging, advertising, and otherwise, frequently upon a national scale, it does everything it can to induce that belief. The middleman is no more than a conduit, a mere mechanical device through which the thing is to reach the ultimate consumer. The manufacturer has invited and solicited the use of its product, and when it leads to disaster it should not be permitted to avoid the responsibility by saying that it made no contract with the consumer. The manufacturer should be held liable because it is in a position to insure against liability and add the cost to the product.

Construing the complaint liberally with a view to substantial justice between the parties, it is manifest that it alleges facts sufficient to constitute a cause of action for liability based on negligence. In Prosser, Law of Torts 665 (3rd Ed. 1964), it is said:

> "Since the liability is to be based on negligence, the defendant is required to exercise the care of a reasonable man under the circumstances. His negligence may be found over an area quite as broad as his whole activity in preparing and selling the product. He may be negligent first of all in designing it, so that it becomes unsafe for the intended use. He may be negligent in failing to inspect or test his materials, or the work itself, to discover possible defects, or dangerous propensities. He may fail to use proper care to give adequate warning to the user, not only as to dangers arising from unsafe design, or other negligence, but also as to dangers inseparable from a properly made product. The warning must be sufficient to protect third persons who may reasonably be expected to come in contact with the product and be harmed by it; and the duty continues even after the sale, when the seller first discovers that the product is dangerous. He is also required to give adequate directions for use, when reasonable care calls for them."

See also to the same effect: 2 Harper and James, The Law of Torts, §§ 28.3 through 28.14, "Liability of Maker for Negligence"; Annot. 81 A.L.R. 2d 138, "Liability of manufacturer or seller for injury caused by animal feed or medicines, crop sprays, fertilizers, insecticides, rodenticides, and similar products."

This is said in 65 C.J.S., Negligence, § 100(3), at 1094:

"As a general rule a manufacturer is under a duty to make an article carefully where its nature is such that it is reasonably certain to place life and limb in peril when negligently made, and he is liable to a third person for an injury resulting from a failure to perform this duty."

In 65 C.J.S., *ibid*, at 1097-99, it is said:

"The manufacturer is liable for an injury to a third person resulting from a failure to perform this duty, provided that such injuries could reasonably be anticipated; and this is the rule even though there is no contract or privity between the parties."

A manufacturer of products, such as the one with which we are concerned in this case, has the duty of reasonable or due care. The status of the manufacturer of such products is not that of an insurer. Annot. 81 A.L.R. 2d 146-47.

This is said in 2 Harper and James, The Law of Torts, § 28.1, at 1535: "This older restrictive doctrine [non-liability in case of no privity] was well adapted to protect the manufacturer from burdens on his activity, but it did so at the expense of the victims of his mistakes. The citadel of privity has crumbled, and today the ordinary tests of duty, negligence and liability are applied widely to the man who supplies a chattel for the use of another. This trend was responsive to ever-growing pressure for protection of the consumer, coupled with a realization that liability would not unduly inhibit the enterprise of manufacturers and that they were well placed both to profit from its lessons and to distribute its burdens."

This is also said in 65 C.J.S., *ibid*, at 1101-02:

"(A)lthough a manufacturer is under a duty to foresee the probable results of normal use of the product manufactured, he does not have to foresee, and is not responsible for, the results of a use which departs from the normal, or could not reasonably have been foreseen or anticipated, or is in violation of an ordinance."

In 65 C.J.S., *ibid*, at 1107, it is said:

"The doctrine of manufacturer's liability for damage resulting from defects in manufactured articles has been applied to damages to property as well as to personal injuries, irrespective of any privity or contractual relation between the parties."

In 65 C.J.S., *ibid*, § 104, at 1135, it is said:

"Although a person may be negligent in the performance or omission of some duty owed to the person injured, no liability attaches unless it appears that there was a causal connection between such negligence and the injury, and the negligence charged was the proximate or legal cause of the injury, rather than a remote cause, or one merely causing a condition providing an opportunity for other causal agencies to act."

We held in *Gwyn v. Motors, Inc.*, 252 N.C. 123, 113 S.E. 2d 302, that the manufacturer of a truck is under a duty to the ultimate purchaser, irrespective of contract, to use reasonable care in the manufacture of the truck and to make reasonable inspection so as not to subject the purchaser to injury from a hidden or latent defect. The Court said: " 'The overwhelming weight of authority is to the effect that the manufacturer of a truck, like the one here in question, owes a duty to the public, irrespective of contract, to use reasonable care in its manufacture and to make reasonable inspection of the construction in the plant where the truck was manufactured.' (Citing numerous authorities)." In that case we reversed a judgment of involuntary nonsuit entered in a court below as to the Ford Motor Company.

In *Tyson v. Manufacturing Co.*, 249 N.C. 557, 107 S.E. 2d 170 (1959), this Court held a manufacturer owes to the ultimate consumer the duty not to construct the article with hidden defects which might result in injury, and to give notice of any concealed dangers, but ordinarily the manufacturer is not liable for injuries from patent dangers.

In *E. I. Du Pont De Nemours & Co. v. Baridon*, 73 F. 2d 26, Baridon brought suit, alleging representations made by the Du Pont Company as to the suitability and safety of its product for disinfecting gladiolus bulbs and bulblets, its giving of directions for the use of Semesan, his reliance upon the representations and directions given, the harmful character of the Semesan when used as directed, which the Du Pont Company knew or should have known, and the loss of his bulbs and bulblets and his consequent damage. The Court in holding the Du Pont Company liable used this language:

"The defendant, however, contends that, because its product was intended to affect only plant life, and property alone was subject to injury, it owed no duty to the plaintiff, since it had no contract with him. With that contention we do not agree. Through its advertising and literature the defendant had expressly invited the plaintiff and other growers to use its product for the purpose of disinfecting bulbs and bulblets, and, since it

had undertaken to direct the manner in which it should be used, the users had a right to assume that the company had exercised such care as an ordinarily prudent manufacturing chemist would usually have used in giving the directions for the use of such a product, and had not knowingly prescribed a use which would destroy their plants."

*Kolberg v. Sherwin-Williams Co.,* 93 Cal. App. 609, 269 P. 975, involved the destruction of orange trees by a spray known as "Citromulsion." The agents of the defendant in that case had represented that the spray would kill the scale and not injure the trees, fruit, or buds. It was also stated that the spray had been used on other groves with "good results." It was shown that Citromulsion was utterly unfit as a spray for orange trees and was inherently dangerous to them. The Court, in sustaining a judgment for the plaintiff, said at page 977 of 269 Pac.: "The liability of the defendant rests upon the sound rule that a manufacturer or seller of an article inherently dangerous to life or property is liable for injuries to the ultimate consumer who has purchased through a middleman. 17 A.L.R. 674, 683."

*Ellis et al. v. Lindmark et al.,* 177 Minn. 390, 225 N.W. 395, involved injury to chickens caused by raw linseed oil negligently shipped by a wholesaler to a retailer as cod liver oil as ordered, and negligently sold by the retailer to chicken raisers for their chickens. The Court held that, under the law, both wholesaler and retailer were liable, saying at page 397 of 225 N.W.: "That the negligence resulted in injury to property and not to the person should not prevent recovery."

In *Murphy v. Sioux Falls Serum Co.,* 44 S.D. 421, 184 N.W. 252, the Court held that the plaintiff, who showed that hog cholera serum was properly administered by a veterinary, and that the hogs died, made out a *prima facie* case of negligence against the manufacturer of the serum.

*McClanahan v. California Spray-Chemical Corp.,* 194 Va. 842, 75 S.E. 2d 712, was an action by apple orchard owners against the manufacturer of apple scab spores eradicant for damage to an apple orchard allegedly resulting from the application of defendant's eradicant. The jury returned a verdict for plaintiffs, but upon motion of defendant, the Circuit Court of Albemarle County set aside the verdict and rendered final judgment for defendant, and plaintiffs brought error. The Supreme Court of Appeals of Virginia, with two Justices dissenting, held, *inter alia,* that the defendant had a duty to warn of the danger to the orchard which would result from improper use of the eradicant. The judgment of the lower court was reversed, and final judgment was entered for the plaintiffs.

In *Rose v. Buffalo Air Service*, 104 N.W. 2d 431 (Neb. 1960), the court held that an insecticide manufacturer and a spraying service were liable for injury to beets sprayed with chemical compounds manufactured as a harmless insecticide, but which actually contained ingredients harmful to beets.

In the case of *McKennon v. Jones*, 244 S.W. 2d 138 (Ark. 1951), a judgment against a manufacturer of a crop spray for loss of bees and honey caused by the spray was held supported by the evidence.

In *La Plant v. E. I. Du Pont De Nemours and Co.*, 346 S.W. 2d 231 (Mo. App. 1961), an action for the death of plaintiff's cattle from consumption of foliage which had been sprayed with "Ammate X" weed killer manufactured by defendants, the court held that the evidence supported the finding that the defendant manufacturer was negligent in labeling the product as not dangerous to livestock. The Court said, at page 245:

"(W)e have but recognized and applied the settled principle, freshly stated with copious citation of supporting authority in *Bean v. Ross Manufacturing Co.*, Mo., 344 S.W. 2d 18, 25, that: 'The supplier of a chattel is subject to liability for injury in its use by another when the supplier knows or should know that its use is or is likely to be dangerous and when there is no reason to believe that the user will realize this, if, further, he (the supplier) fails to use reasonable care to warn.'

\*    \*    \*

". . . '(T)he common law is not a static but a dynamic and growing thing. Its rules arise from the application of reason to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life. \* \* \*.' *Barnes Coal Corp. v. Retail Coal Merchants Ass'n.*, 4 Cir., 128 F. 2d 645, 648(5); *Roach v. Harper*, 143 W. Va. 896, 105 S.E. 2d 564, 568."

In *Smith v. Atco Co.*, 6 Wis. 2d 371, 94 N.W. 2d 697, 74 A.L.R. 2d 1095, reh. den. 7 April 1959, the Court held as correctly summarized in the A.L.R. Report:

"In the instant tort action for negligence, the owner of a mink ranch sought damages for harm to some and death of other mink housed and bred in boxes dipped with a preparation manufactured by one defendant and sold by his codefendant. The plaintiff had been supplied with the product by one who had purchased it from the defendant seller.

"On an appeal by the defendants, a judgment for the plaintiff, rendered by the Circuit Court, Milwaukee County, Wiscon-

sin, pursuant to the jury's special verdict, was affirmed, on condition of the plaintiff's acceptance of a specified remittitur of the excessive damages awarded, by the Supreme Court of Wisconsin, in an opinion by Currie, J., which, ruling that the record contained credible evidence to sustain the jury's findings that the product was dangerous to mink and caused the plaintiff's losses, rejected the rule that a manufacturer or seller of a product is not liable for an injury or damage resulting from use of the product in the absence of privity of contract between the plaintiff and the defendant, and held that the question of liability should be approached from the standpoint of the standard of care to be exercised by the reasonably prudent person in the position of the defendant manufacturer or seller."

In its opinion the Court said:

"We deem that the time has come for this court to flatly declare that in a tort action for negligence against a manufacturer, or supplier, whether or not privity exists is wholly immaterial. The question of liability should be approached from the standpoint of the standard of care to be exercised by the reasonably prudent person in the shoes of the defendant manufacturer or supplier. Such an approach will eliminate any necessity of determining whether a particular product is 'inherently dangerous.' If a manufacturer or supplier is hereafter to be relieved from liability as a matter of law by the courts, such result should be reached on the basis that there was no causal negligence established against the defendant rather than that the product was not inherently dangerous."

In *Carter v. Yardley & Co., Ltd.*, 319 Mass. 92, 64 N.E. 2d 693, 164 A.L.R. 559 (1946), the Massachusetts Court carefully reviewed the development of the law of products liability with respect to manufacturers and suppliers for negligence where no privity of contract exists. That Court came to the conclusion that the exceptions had so swallowed up the general rule of non-liability that such general rule for all practical purposes had ceased to exist. The conclusion reached was expressed as follows: "The time has come for us to recognize that that asserted general rule no longer exists. In principle it was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We now abandon it in this Commonwealth." 319 Mass. at 104, 64 N.E. 2d at 700.

There is to be found in the North Carolina decisions support for the inherently and imminently dangerous product exceptions to the

privity requirement and also support for the unwholesome food, beverage and drug exception thereto, to wit:

"*Perry v. Kelford Coca-Cola Bottling Co.* (1928), 196 N.C. 175, 145 S.E. 14 (supporting exception as applied to manufacturer); *Broadway v. Grimes* (1933), 204 N.C. 623, 169 S.E. 194 (supporting exception as to manufacturers and bottlers of beverages); *Corum v. R. J. Reynolds Tobacco Co.* (1933), 205 N.C. 213, 171 S.E. 78 (supporting exception as to manufacturer, bottler, or packer); *Thomason v. Ballard & Ballard Co.* (1935), 208 N.C. 1, 179 S.E. 30 (supporting exception as to manufacturer, bottler, or packer); *Hampton v. Thomasville Coca-Cola Bottling Co.* (1935), 208 N.C. 331, 180 S.E. 584 (supporting exception as to manufacturer, bottler, or packager)." 74 A.L.R. 2d 1221.

Paraphrasing the Massachusetts Court in *Carter v. Yardley & Co., Ltd., supra*, the time has come for us to recognize that the exceptions to the general rule of non-liability of a manufacturer for negligence because of lack of privity of contract have so swallowed up the general rule of non-liability that such general rule for all practical purposes has ceased to exist. Its principle was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We have abandoned it in this jurisdiction.

Plaintiff alleges in substance in his complaint as follows: In April, 1964, he, a farmer, purchased a quantity of Atrazine 20 G for use on his 1964 corn crop through a retailer, J. F. Hollowell & Son, Inc., of Winfall, North Carolina, who in turn, had purchased plaintiff's order of the product from and through defendants' representative and distributor, Daly Herring Company of Ahoskie, North Carolina; and that this Atrazine 20 G until opened and used by the plaintiff was in the original closed containers of the manufacturer, the defendants. He used and applied this Atrazine 20 G on his 1964 corn crop according to the directions of the defendants, and in reliance upon their representations as advertised on the original containers. These original containers showed Atrazine 20 G as being recommended as a weed killer for use in the growing of corn in particular, and defendants had instructions regarding its use on the containers. The only warning given by defendants in the use of said product was that the manufacturer and original seller did not recommend that the crop of corn for which said product was used be followed in the same year with another planting of corn, or followed after its initial use by a crop or crops of small grain the same year. In 1965 he planted peanuts and soybeans upon his lands

on which he had used Atrazine 20 G the previous year; that the crop of peanuts and soybeans were planted, cultivated and harvested uniformly and according to good husbandry; that the crops of peanuts and soybeans harvested for the year 1965 upon land upon which he had used Atrazine the previous year were far less in quantity and substantially lower in quality than his crop of peanuts and soybeans for said year grown on similar lands on which Atrazine 20 G had not been used. He is informed, believes and alleges that defendants knew, or in the exercise of due care should have known, and should have warned him of the potential bad effects of Atrazine 20 G upon succeeding crops other than corn and small grain in ample time to have prevented any damage to his 1965 crops, and that defendants negligently failed to so warn him. He is presently advised that defendants, because of the injurious effects of Atrazine 20 G upon succeeding crops, theoretically withdrew Atrazine 20 G from the market in the fall of 1963, but carelessly and negligently failed to actually withdraw the same from the market, and carelessly and negligently permitted plaintiff in total ignorance of the probable injurious effect upon his crops to purchase the said Atrazine 20 G from defendants' distributor.

Construing the complaint liberally with a view to substantial justice between the parties, it is also manifest that it alleges facts sufficient to constitute a cause of action for liability based upon breach of warranty.

In *Simpson v. Oil Co.*, 217 N.C. 542, 8 S.E. 2d 813, the basis of plaintiff's cause of action against the manufacturer and distributor of "Amox" was the warranty *to the ultimate consumer* appearing on the can sold to the druggist and purchased from him by plaintiff. Seawell, J., for the Court, stated: "We know of no reason why the original manufacturer and distributor should not, for his own benefit and that, of course, of the ultimate consumer, make such assurances, nor why they should not be relied upon in good faith, nor why they should not constitute a warranty on the part of the original seller and distributor running with the product into the hands of the consumer, for whom it was intended."

As to implied warranty as between manufacturer and consumer, in the absence of immediate privity of contract, in respect to food and drink placed on the market by the manufacturer in sealed containers, see the legal principles set forth in the concurring opinion of Sharp, J., in *Terry v. Bottling Co.*, 263 N.C. 1, 138 S.E. 2d 753, and application thereof in our decision of May 10, 1967, in *Tedder v. Bottling Co.*, 270 N.C. 301, 154 S.E. 2d 337.

Defendants, by the legend on the bags, specifically directed attention to whether the use of Atrazine on a corn crop would in-

juriously affect subsequent crops on the same land. They warned the ultimate consumer of possible injurious effects to "another planting of corn" or to "a crop or crops of small grain" on the same land in the same year. This sole warning was restricted expressly to the one specific situation in which injurious effects might reasonably be anticipated. This legend on the bags constituted unqualified assurance or warranty to plaintiff, the ultimate consumer, that the use of Atrazine in connection with his 1964 corn crop would have no injurious effect in connection with the use of the same land for peanuts and soybeans in 1965.

Plaintiff has incorporated into a single cause of action allegations pertinent to (1) a cause of action for actionable negligence, and (2) a cause of action for breach of warranty.

Defendants demurred to the complaint, *inter alia*, that "there is improper joinder of causes of action." Bobbitt, J., said in *Heath v. Kirkman*, 240 N.C. 303, 306, 82 S.E. 2d 104, 106:

> "In instances where plaintiff may unite in the same complaint two or more causes of action, each cause of action must be separately stated. G.S. 1-123. Demurrer is proper when it appears upon the face of the complaint that, '5. Several causes of action have been improperly united.' G.S. 1-127. The quoted provision has been considered frequently when demurrer has been interposed on the ground that two or more *separately stated* causes of action have been improperly united in the same complaint. It is equally applicable when a complaint alleges facts sufficient to constitute two or more causes of action but fails to state separately facts sufficient to constitute each cause of action. G.S. 1-123; Rule 20(2), Rules of Practice in the Supreme Court, 221 N.C. 557; *King v. Coley*, 229 N.C. 258, 49 S.E. 2d 648; *Parker v. White*, 237 N.C. 607, 75 S.E. 2d 615; *Large v. Gardner*, 238 N.C. 288, 77 S.E. 2d 617. Too, each separately stated cause of action must be complete within itself; and it is not permissible to incorporate by reference allegations set forth in another separately stated cause of action. *Wrenn v. Graham*, 236 N.C. 719, 74 S.E. 2d 232; *Alexander v. Brown*, 236 N.C. 212, 72 S.E. 2d 522; *Guy v. Baer*, 234 N.C. 276, 67 S.E. 2d 47."

The demurrer should have been sustained on the ground of improper joinder of causes of action. However, the court erred in dismissing the action, and the case is remanded to the lower court with leave to plaintiff to plead separately his causes of action for alleged actionable negligence and for alleged breach of warranty.

Demurrer sustained.

Remanded with leave to plead separately two causes of action.