LUCILLE CLEMMONS v. LIFE INSURANCE COMPANY OF GEORGIA.

(Filed 15 May 1968.)

### 1. Pleadings § 12—

G.S. 1-151 requires the court to construe liberally a pleading challenged by demurrer with a view to substantial justice between the parties, and the demurrer will not be sustained unless the complaint is fatally and wholly defective.

### 2. Same—

A demurrer admits for the purpose of testing the sufficiency of the pleadings the truth of factual averments well stated and all relevant inferences of fact reasonably deducible therefrom.

### 3. Master and Servant § 33—

When an employee, in undertaking to do that which he was employed to do, adopts a method which constitutes a tort and inflicts injury on another, it is the fact that he is about his employer's business which imposes liability upon the employer, and the employer is not excused from liability in that the employee adopted a wrongful or unauthorized method, or even a method expressly prohibited.

### 4. Same— Complaint held to state a cause of action of assault by defendant's agent in the course of employment.

Plaintiff's allegations were to the effect that she was a customer of the defendant life insurance company and that she periodically paid premiums to the defendant's agents who called at her home, that on the day of collection she informed an agent of the defendant that she was not able to pay the premium for that week, that the agent became angered and threatened to cancel the policy of insurance, that at the plaintiff's demand to leave her premises the agent produced a pistol, pointed it at plaintiff, and threatened to shoot her, and that he continued to berate plaintiff about her failure to pay the premium. *Held:* The allegations of the complaint are sufficient to state a cause of action of assault by the defendant's agent within the course and scope of his employment.

CAMPBELL, J., dissenting.

APPEAL by plaintiff from *Mintz, J.,* 13 November 1967, Session, NEW HANOVER Superior Court.

The plaintiff instituted a civil action to recover compensatory and punitive damages from the defendant by reason of an alleged assault upon her by an alleged agent of the defendant.

The portions of the complaint pertinent to this appeal are as follows:

"THIRD: That for many years before Monday, November 21, 1966, the plaintiff herein had been a customer of the defendant herein, having purchased various life insurance policies from the defendant herein, the premiums for which policies the

plaintiff paid periodically to the defendant's agents who called at the plaintiff's home for the purpose of collecting such premiums.

"FOURTH: That on Monday, November 21, 1966, at about 5 o'clock P.M., one Morris Weeks, while employed by the defendant as its agent for the purpose of collecting insurance premiums from this plaintiff and others, came to the home of this plaintiff for the purpose of collecting for the defendant an insurance premium which the plaintiff herein owed to the defendant. That the said Morris Weeks had been to the plaintiff's home on many other occasions, collected premiums from the plaintiff for the defendant and was at all times hereinafter mentioned acting as agent, servant or employee of the defendant within the course and scope of his employment as such agent, servant or employee.

"FIFTH: That on November 21, 1966, at about 5 o'clock P.M., when the said Morris Weeks came to the home of the plaintiff herein for the purpose of collecting the premium then due on certain policies which the plaintiff had with the defendant, the plaintiff did not have the money to pay the premium due the defendant and so advised the defendant's agent, Morris Weeks. That when the plaintiff advised the said Morris Weeks that she did not have the necessary money to pay the premium which he had come to collect for the defendant, the said Morris Weeks became angered and in a loud and rude voice said to the plaintiff, 'I am tired of you putting me off every time I come by. If you don't have it next time I am going to lapse the insurance,' whereupon the plaintiff herein asked the said Morris Weeks to leave her home and to leave the porch upon which he was standing; the said Morris Weeks refused to leave the premises and replied to the plaintiff herein, 'You don't talk to me like that, woman,' and thereupon produced a pistol in his hand which he pointed at the plaintiff herein and the said Morris Weeks said to the plaintiff at that time, 'I will shoot you,' that the said Morris Weeks then walked out into the front yard of the plaintiff's home where he continued to berate the plaintiff for not having the money there to pay the insurance premium, telling her again that she had better have the money the next time he came until one Elsie Logan who was present stated that she would call the police and the said Morris Weeks then said, 'I don't care who you call,' went to his car which was parked in front of the plaintiff's home, stood there for a few moments, got into the car and left."

The plaintiff further alleged actual damages by way of medical expenses for treatment of hypertension brought about by the alleged assault; and alleged that she was entitled to punitive damages.

The defendant filed a demurrer to the complaint, stating as grounds therefor that the complaint does not state facts sufficient to constitute a cause of action ". . . for that it appears on the face of the Complaint that the alleged wrongful act was outside the scope of employment of the said Morris Weeks." The trial judge entered an order sustaining the demurrer, stating ". . . it appearing that the alleged wrongful act was outside the scope of the employment of the defendant *(sic)* . . ."

From the Order sustaining the defendant's demurrer to the complaint, plaintiff appealed.

*W. G. Smith and Jerry Spivey, attorneys for plaintiff appellant.*
*Marshall and Williams by Lonnie B. Williams, attorneys for defendant appellee.*

BROCK, J.  G.S. 1-151 requires the Court to construe liberally a pleading challenged by demurrer with a view to substantial justice between the parties, and the demurrer will not be sustained unless the complaint is fatally and wholly defective. *Corprew v. Chemical Corp.,* 271 N.C. 485, 157 S.E. 2d 98. It is axiomatic that a demurrer admits, for the purpose of testing the sufficiency of the pleadings, the truth of factual averments well stated and all relevant inferences of fact reasonably deducible therefrom. *Corprew v. Chemical Corp., Id.*

Under the allegations of the present complaint, if there was an assault upon the plaintiff by the agent, it occurred when the agent ". . . produced a pistol in his hand which he pointed at the plaintiff . . . (and) said to the plaintiff . . . I will shoot you . . ." We may assume that the defendant did not authorize or desire such conduct on the part of its agent, but that is not the question presented. The question to be determined is whether, under a liberal construction, the complaint alleges facts from which it can be seen, or reasonably deduced, that the agent was acting in the furtherance of the defendant's business.

When the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another, it is the fact that he was about his master's business which imposes liability. That he adopted a wrongful or unauthorized method, or even a method expressly prohibited, does not excuse the employer from liability. *West v. Woolworth Co.,* 215 N.C. 211, 1 S.E. 2d 546.

Although the complaint does not allege that the agent threatened to shoot the plaintiff *if she did not pay* the premium due on her policy of insurance, nevertheless the allegations portray an agent disgruntled by past unsuccessful efforts to collect from the plaintiff, and portray an agent intent upon impressing the plaintiff with the necessity that she accede to his demands for prompt payment in the future. His drawing of the pistol merely accentuated his attempt at verbal intimidation of the plaintiff. He talked to her in a "loud and rude voice" before drawing the pistol and he "continued to berate the plaintiff for not having the money there to pay the insurance premium" after drawing the pistol.

The defendant seeks to lift from this diatribe by the agent the intervening protestations by the plaintiff that the agent leave her premises, and asserts that the drawing of the pistol was only in response to plaintiff's demand; therefore, defendant asserts, the pointing of the pistol constituted a departure from the furtherance of the defendant's business. Defendant relies heavily upon *Wegner v. Delicatessen,* 270 N.C. 62, 153 S.E. 2d 804.

We view the *Wegner* case as factually distinguishable. There the agent completely turned away from his duties as bus boy for the purpose of gratifying some unexplained personal animosity towards a customer; his assault upon the customer was not made in an effort to accomplish his duties as bus boy. In the instant case, the allegations show the agent's entire course of conduct to be designed to impress upon the plaintiff that she must have the money ready when he came back for it, and that she could not frustrate his efforts by ordering him off her premises. The allegations show that his entire course of conduct was directed towards obtaining the prompt future payment of premiums on the defendant's insurance contract (the very service which it is alleged he performs for the defendant).

We hold that the allegations of the complaint are sufficient to withstand defendant's demurrer. Whether the plaintiff can make out a case upon a trial is a different matter.

Reversed.

PARKER, J., concurs. CAMPBELL, J., dissents.

CAMPBELL, J., dissenting: I am constrained to dissent from the majority holding in this case. The facts sufficiently appear in the majority opinion, but I am of the opinion that the plaintiff has overpleaded her case. The complaint shows on its face that the agent Weeks went to the home of the plaintiff for the purpose of collecting insurance premiums and when payment was refused expressly stated:

"If you don't have it next time, I am going to lapse the insurance." This conduct on the part of Weeks was clearly within the scope of his agency.

As shown by the complaint, however, the plaintiff brought on the assault when she requested Weeks to leave her premises. Her language can only be surmised, but the complaint states that Weeks replied: "You don't talk to me like that, woman," and produced a pistol and proceeded to assault the plaintiff with the pistol, saying "I will shoot you."

The complaint shows that the agent Weeks then proceeded out into the front yard and at that point he did not continue to assault the plaintiff but instead it states that Weeks "berated" the plaintiff for not having the money to pay the insurance premium. Webster's Third New International Dictionary (1968) defines the word "berate" as "to heap reproaches on; criticize vigorously; scold or chide vehemently." It certainly does not mean an assault. The assault had terminated when the agent Weeks left the immediate vicinity of the plaintiff. The assault was in connection with the plaintiff's request that the agent Weeks leave her premises and it had no connection with or relation to the purpose of collecting the premium on behalf of the defendant.

The assault was clearly without the scope of the agency. This case is controlled by the decision of *Wegner v. Delicatessen,* 270 N.C. 62, 153 S.E. 2d 804, where the Court said: "However, the assault, according to the plaintiff's testimony, was not for the purpose of doing anything related to the duties of a bus boy, but was for some undisclosed, personal motive." In the instant case, the alleged facts are stronger for the defendant because, according to the allegations of the plaintiff herself, the assault was not for the purpose of doing anything related to the duties of collecting an insurance premium but was because of a disclosed personal motive — the agent Weeks was offended by the manner in which the plaintiff had spoken to him.