PHILLIP DRIVER AND NANCY DRIVER v. BURLINGTON AVIATION, INC. AND THE CESSNA AIRCRAFT COMPANY

No. 9215SC193

(Filed 15 June 1993)

1. **Negligence § 9 (NCI4th) — personal injury action — intentional misrepresentation not appropriate theory — sufficiency of allegations based on negligence**

   In an action to recover for injuries sustained in a plane crash, plaintiffs could not recover on a theory of negligent misrepresentation, since that action lies where pecuniary loss results from the supplying of false information to others for the purpose of guiding them in their business transactions, and is not the basis for recovery for personal injury; however, the allegations of the amended complaint were sufficient to state a claim for relief based upon traditional negligence rules.

   **Am Jur 2d, Negligence §§ 126, 127.**

2. **Negligence § 86 (NCI4th) — negligence of preparer of instructional manual — sufficiency of complaint to allege simple negligence — insufficiency to allege gross negligence**

   Plaintiffs' complaint was sufficient to state a claim of simple negligence but not gross negligence against the preparer or producer of an instructional manual where plaintiffs alleged that defendant plane manufacturer had a duty to the pilot and his passengers to provide complete and accurate instruction concerning carburetor icing and slow flight operation of

DRIVER v. BURLINGTON AVIATION, INC.

[110 N.C. App. 519 (1993)]

the aircraft; defendant omitted such information from the manual and wrongfully instructed about carburetor icing; defendant knew or should have known that the aircraft would be operated for slow flight with a passenger aboard; and the negligence of defendant actually and proximately caused the damages to plaintiffs.

Am Jur 2d, Negligence §§ 81, 239.

3. **Limitations, Repose, and Laches § 27 (NCI4th)— negligence in preparing instruction manual—date of sale not alleged— action not barred by statute of repose**

In an action to recover for injuries sustained in a plane crash allegedly resulting from defendant aircraft manufacturer's negligence in preparing and producing an instruction manual to accompany the aircraft, there was no merit to defendant's contention that plaintiffs' underlying action was an action for a defective product, the aircraft, that the aircraft was sold to defendant lessee eleven years prior to the accident in question, and that the action was therefore barred by the statute of repose, since plaintiffs' underlying action was a products liability action, the product was the instruction manual, and the date of sale of the manual, a date which was not pled offensively or defensively by the parties, was therefore the date which would trigger the statute of repose.

Am Jur 2d, Products Liability § 921.

Validity and construction of statute terminating right of action for product-caused injury at fixed period after manufacture, sale, or delivery. 25 ALR4th 641.

4. **Uniform Commercial Code § 10 (NCI3d)— sale of allegedly defective instruction manual to pilot—no action by passenger for breach of express and implied warranties**

Plaintiffs were not entitled to assert claims for breach of express and implied warranties arising out of the sale of an instruction manual to accompany the aircraft which crashed, thereby injuring plaintiffs, since the manual was sold to the pilot of the aircraft, not to plaintiff passenger, and the seller's warranty of N.C.G.S. §§ 25-2-313 through 25-2-315 did not extend to plaintiffs.

Am Jur 2d, Products Liability §§ 459 et seq.; Sales § 708.

Construction and effect of UCC Art. 2, dealing with sales.
17 ALR3d 743.

Third party beneficiaries of warranties under UCC § 2-318.
100 ALR3d 743.

5. **Products Liability § 5 (NCI4th) — defective aircraft manual — no ultrahazardous activity — no strict liability**

Plaintiffs' complaint was insufficient to state a claim for strict liability where plaintiffs claimed that defendant failed to provide adequate warnings and information in an instruction manual written to accompany an aircraft which crashed while plaintiff was a passenger, since there was no ultrahazardous activity in this case, and strict liability therefor did not apply.

Am Jur 2d, Negligence § 396.

6. **Negligence § 75 (NCI4th) — allegedly negligent preparation of aircraft instruction manual — personal injury in plane crash — sufficiency of claim for negligent infliction of emotional distress**

In an action to recover for personal injuries sustained in a plane crash allegedly resulting from defendant's negligence in failing to provide a correct and complete instruction manual to accompany the aircraft, plaintiffs' complaint was sufficient to state a claim for negligent infliction of emotional distress but was insufficient to state a claim for intentional infliction of emotional distress.

Am Jur 2d, Negligence § 81.

Appeal by plaintiffs from order entered 26 August 1991 by Judge J. B. Allen, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 3 February 1993.

On 19 November 1989, plaintiff Phillip Driver was severely injured when a Cessna model 152 aircraft, in which he was a passenger, lost power and crashed in Alamance County. At the time of the crash, the aircraft was being operated by Neil Harris, who had rented it from defendant-owner Burlington Aviation, Inc. Plaintiffs brought this action to recover damages for personal injuries and loss of consortium against Burlington Aviation alleging that it had negligently maintained the aircraft and that such negligence was the proximate cause of the crash. Plaintiffs were later granted leave to amend their complaint to add Cessna Aircraft

Co. [hereinafter "Cessna"] as a defendant. In their amended complaint, plaintiffs allege in part:

4. . . . Burlington Aviation made the initial sale for use of a new Cessna 152 Information Manual to Neil Harris. This sale was the initial sale for use of the manual.

6. . . . Burlington Aviation under authority of Cessna Aircraft, provided flight and ground instruction to Neil Harris, including instruction on the subjects of carburetor icing and the slow-flight operation of a Cessna 152 model . . . .

7. . . . Cessna Aircraft is engaged in the business of preparing, producing and publishing instructional material on the operation of the Cessna 152 aircraft, including the Cessna Information Manual purchased by Neil Harris.

9. . . . prior to operating the Aircraft, Neil Harris obtained instructions and studied material concerning carburetor icing and the slow-flight operation of a Cessna model 152, including the Cessna 152 Information Manual. Neil Harris relied upon this instruction and the material contained in the Cessna 152 Information Manual during his operation of the Aircraft.

10. . . . Cessna Aircraft omitted information concerning carburetor icing from the Cessna Information Manual and the Cessna Information Manual wrongfully instructed concerning carburetor icing and the slow-flight characteristics of the Aircraft. Specifically, the manual:

(a) did not describe meteorological conditions that were conducive to carburetor icing.

(b) did not warn that in slow-flight, the Aircraft would likely crash if carburetor icing occurred, even if the carburetor icing remedy (carburetor heat) was activated after carburetor icing occurred.

(c) did not advise pilots to activate carburetor heat during slow-flight to prevent carburetor icing.

12. . . . Cessna Aircraft and Burlington Aviation knew, or should have known, that the Aircraft would be operated for slow-flight with a passenger aboard.

17. Cessna Aircraft and Burlington Aviation had a duty to exercise due care for those who might foreseeably be affected by their activities.

18. . . . Burlington Aviation and Cessna Aircraft had a duty to Neil Harris and his passengers, such as Phillip Driver, to provide complete and accurate instruction concerning carburetor · icing and the slow-flight operation of the Aircraft.

19. The negligence of Cessna Aircraft and Burlington Aviation as alleged herein actually and proximately caused the damages to the plaintiffs.

Based upon these allegations, plaintiffs' complaint asserts seven claims for relief against defendants resting upon theories of negligence, gross negligence, breach of express and implied warranties, strict liability, and intentional and negligent infliction of emotional distress.

In lieu of a responsive pleading, Cessna moved to dismiss the action against it pursuant to G.S. § 1A-1, Rule 12(b)(6) on the grounds that the amended complaint failed to state a claim against Cessna upon which relief could be granted. The trial court allowed the motion and entered an order dismissing plaintiffs' claims against Cessna; plaintiffs appeal.

*Wishart, Norris, Henninger & Pittman, P.A., by J. Wade Harrison and Julie A. Risher, for plaintiffs-appellants.*

*Huff, Poole & Mahoney, P.C., by David N. Ventker, and Maupin, Taylor, Ellis & Adams, P.A., by John T. Williamson, for defendant-appellee The Cessna Aircraft Company.*

MARTIN, Judge.

Initially, we note that plaintiffs have appealed from an interlocutory order. Judge Allen's order dismisses plaintiffs' action against Cessna, but does not dispose of plaintiffs' claims against Burlington Aviation, nor does the order contain a certification that "there is no just reason for delay" as required by G.S. § 1A-1, Rule 54(b) for entry of a final judgment affecting fewer than all of the claims or parties. As a general rule, no appeal lies from an interlocutory order. *Auction Co. v. Myers*, 40 N.C. App. 570, 253 S.E.2d 362 (1979). However, G.S. §§ 1-277 and 7A-27(d) allow an immediate appeal from an interlocutory order which affects

a substantial right. *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976); *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976). In the present case, we conclude that the trial court's dismissal of plaintiffs' claims against Cessna affects a substantial right to have determined in a single proceeding whether plaintiffs have been damaged by the actions of one, some or all defendants where their claims arise upon the same series of transactions, *Fox v. Wilson*, 85 N.C. App. 292, 354 S.E.2d 737 (1987), and we will consider the appeal.

Plaintiffs' sole contention on appeal is that the trial court erred in granting Cessna's motion to dismiss pursuant to G.S. § 1A-1, Rule 12(b)(6) because their amended complaint states cognizable claims for relief. For the reasons stated below, we reverse in part and remand this case to the trial court.

The question presented by a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987). Furthermore, in analyzing the sufficiency of the complaint to withstand a Rule 12(b)(6) motion, the complaint must be liberally construed, *Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987), and " 'a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*' " *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970), *quoting*, *2A J. Moore, Moore's Federal Practice*, ¶ 12.08 (2d ed. 1968) (emphasis original).

[1]   In the present case, plaintiffs allege that defendant Cessna "is engaged in the business of preparing, producing, and publishing instructional material," including the Cessna information manual purchased and relied upon by the pilot, Neil Harris, in the operation of the Cessna model 152 aircraft and that the Cessna materials "promulgated dangerously inadequate information about preventing carburetor icing and wrongfully instructed concerning carburetor icing and the slow-flight characteristics of the aircraft," the conditions which allegedly caused the aircraft to crash on 19 November 1989 resulting in plaintiffs' injuries. At the hearing on Cessna's motion to dismiss and in their brief to this Court, plaintiffs argued

that the allegations in the complaint and amended complaint give rise to a claim based upon negligent misrepresentation.

In this State, we have adopted the Restatement 2d definition of negligent misrepresentation and have held that the action lies where *pecuniary loss* results from the supplying of false information to others for the purpose of guiding them in their business transactions. *See* Restatement (Second) of Torts § 552 (1977); *Raritan River Steel v. Cherry, Bekaert & Holland,* 79 N.C. App. 81, 339 S.E.2d 62 (1986), *aff'd in part and rev'd in part,* 322 N.C. 200, 367 S.E.2d 609 (1988) (action brought against accountants); *See also, Howell v. Fisher,* 49 N.C. App. 488, 272 S.E.2d 19 (1980), *disc. review denied,* 302 N.C. 218, 277 S.E.2d 69 (1981); *Davidson and Jones, Inc. v. Cty. of New Hanover,* 41 N.C. App. 661, 255 S.E.2d 580, *disc. review denied,* 298 N.C. 295, 259 S.E.2d 911 (1979) (actions allowed against engineers); *Alva v. Cloninger,* 51 N.C. App. 602, 277 S.E.2d 535 (1981) (action allowed against real estate appraiser); *Condominium Assoc. v. Scholz Co.,* 47 N.C. App. 518, 268 S.E.2d 12, *disc. review denied,* 301 N.C. 527, 273 S.E.2d 454 (1980); *Industries, Inc. v. Construction Co.,* 42 N.C. App. 259, 257 S.E.2d 50, *disc. review denied,* 298 N.C. 296, 259 S.E.2d 301 (1979) (actions allowed against architects); *Ingle v. Allen,* 71 N.C. App. 20, 321 S.E.2d 588 (1984), *disc. review denied,* 313 N.C. 508, 329 S.E.2d 391 (1985); *Jenkins v. Wheeler,* 69 N.C. App. 140, 316 S.E.2d 354, *disc. review denied,* 311 N.C. 758, 321 S.E.2d 136 (1984) (actions allowed against attorneys). However, we have not found, and plaintiffs have not directed us to, any case in which the theory of negligent misrepresentation was approved as a basis for recovery for personal injury.

Though plaintiffs may have mislabeled the theory in their argument, we believe the allegations of the amended complaint, when taken as true and construed liberally, are sufficient to state a claim for relief based upon traditional negligence rules. The courts of this State have long acknowledged that the manufacturer of a chattel is under a duty to use reasonable care in its manufacture, and, when reasonable care so requires, to give adequate directions for its use. 11 Strong's N.C. Index 3d *Sales* § 22 (1978). Furthermore, the manufacturer of a chattel is liable to those whom he should expect to use the chattel, or be in the vicinity of its reasonable use, for injuries resulting to persons or property from a failure to perform his duty. *Id.* Liability of the manufacturer for resulting injuries when he knows that an article is to be used for a specific

DRIVER v. BURLINGTON AVIATION, INC.

[110 N.C. App. 519 (1993)]

purpose rests upon general principles of negligence. *Id.* In identifying the types of negligent conduct for which manufacturers may be held liable, our Supreme Court stated:

> "He [the manufacturer] may be negligent in failing to . . . use proper care to give adequate warning to the user, not only as to dangers arising from unsafe design, or other negligence, but also as to dangers inseparable from a properly made product. The warning must be sufficient to protect third persons who may reasonably be expected to come in contact with the product and be harmed by it; and the duty continues even after the sale . . . . He is also required to give adequate directions for use, when reasonable care calls for them."

*Corprew v. Chemical Corp.*, 271 N.C. 485, 491, 157 S.E.2d 98, 103 (1967), *quoting, W. Prosser, Law of Torts* 665 (3d. ed. 1964). Applying these principles, this Court found that plaintiff stated a claim for wrongful death against the manufacturer of a chemical where the decedent suffered aplastic anemia resulting from decedent's exposure to the chemical during the course of his employment and where the manufacturer had failed to adequately warn of its inherent dangers. *Davis v. Siloo Inc.*, 47 N.C. App. 237, 267 S.E.2d 354, *disc. review denied*, 301 N.C. 234, 283 S.E.2d 131 (1980). In *Davis*, the chemical contained a label, but the manufacturer failed to include on the label any warning of the chemical's dangerous propensities if absorbed through the skin. *Id.* Plaintiff alleged in the complaint that the manufacturer knew or should have known of the dangers inherent in the chemical, knew or should have known that these dangers could be encountered with ordinary use of the chemical, provided a label which inadequately warned of the potential dangers of the chemical if exposed to skin, and knew or should have known that a user would rely upon the inadequate warnings on the label. *Id.* This Court held that these allegations were sufficient to state a claim against the manufacturer based upon negligence, saying:

> . . . the manufacturer . . . will be subject to liability under a negligence theory for damages which proximately result from the failure to provide adequate warnings as to the product's dangerous propensities which are known or which by exercise of care commensurate with the danger should be known by the manufacturer, or from the failure to provide adequate direc-

tions for the foreseeable user as to how the dangerous product should or should not be used with respect to foreseeable uses.

*Id.* at 245-46, 267 S.E.2d at 359.

The complaint in *Davis* was filed prior to the effective date of the Products Liability Act, Chapter 99B of the North Carolina General Statutes; and therefore, the Act was inapplicable. However, the application of the Products Liability Act in such cases does not negate the application of general negligence principles. *See McCollum v. Grove Mfg. Co.*, 58 N.C. App. 283, 293 S.E.2d 632, *disc. review allowed*, 306 N.C. 742, 295 S.E.2d 760 (1982), *aff'd*, 307 N.C. 695, 300 S.E.2d 374 (1983). G.S. § 99B-1(3) defines a "product liability action" as

. . . any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging or labeling of any product.

N.C. Gen. Stat. § 99B-1(3) (1989). Chapter 99B does not adopt the doctrine of strict liability, as clearly demonstrated by the language in G.S. § 99B-4 which codified the common law defense of contributory negligence in products liability actions. N.C. Gen. Stat. § 99B-4; *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 678, 268 S.E.2d 504, 510 (1980). Thus, in enacting the Products Liability Act, the Legislature reaffirmed the reasoning of the pre-statute cases holding that the essential elements of an action for products liability are based upon negligence and include: "(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach; and (4) loss because of the injury." *McCollum* at 286, 293 S.E.2d at 635.

[2] In the present case, plaintiffs' amended complaint alleged that Cessna had a duty to the pilot and his passengers "to provide complete and accurate instruction concerning carburetor icing and the slow-flight operation of the [a]ircraft," that Cessna "omitted information concerning carburetor icing from the Cessna Information Manual and the . . . Manual wrongfully instructed concerning carburetor icing and the slow-flight characteristics of the [a]ircraft," that Cessna "knew or should have known, that the [a]ircraft would

be operated for slow-flight with a passenger aboard," and that "[t]he negligence of Cessna . . . actually and proximately caused the damages to the plaintiffs." Clearly, these allegations are sufficient to state a claim for relief based on a theory of negligence against Cessna in the preparation and publication of the Cessna Information Manual. Although this case appears to be a case of first impression involving a claim for negligence against the preparer or producer of an instructional manual, this Court recognized in *Millikan v. Guilford Mills, Inc.,* 70 N.C. App. 705, 320 S.E.2d 909 (1984), *cert. denied,* 312 N.C. 798, 325 S.E.2d 631 (1985):

> It is a matter of common knowledge that there is hardly a machine, device, or piece of equipment sold in this country that is not accompanied by an instruction manual, sheet, or label of some kind. The publication and distribution of such information is encouraged, if not required, by innumerable government agencies, consumer groups and industry associations; and *the failure of manufacturers and distributors to properly inform purchasers and other users of a product's hazards, uses, and misuses is a basis for rendering them legally liable for injuries resulting therefrom under some circumstances.* (emphasis added.)

*Id.* at 710-11, 320 S.E.2d at 913; *See also, Smith v. Selco Products, Inc.,* 96 N.C. App. 151, 385 S.E.2d 173 (1989). Therefore, we cannot say "to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim," *Sutton, supra.,* and the trial court erred in dismissing Count I of plaintiffs' amended complaint stating a claim for relief against Cessna for negligence.

[3]   At the hearing on its motion to dismiss and in its brief to this Court, Cessna argued that plaintiffs' underlying action is an action for a defective product and that the "defective product" is the aircraft. Cessna further argued that since the aircraft was sold to Burlington Aviation on 19 October 1978, a fact which was not pled by either party, but which was stipulated at the hearing on Cessna's motion to dismiss, plaintiffs' action was barred by the statute of repose, G.S. § 1-50(6). We find, however, that if plaintiffs' underlying action is a products liability action, the product to which the action applies is not the aircraft as Cessna suggests, but the instructional manual. There are no allegations in plaintiffs' amended complaint contending that the aircraft was in

DRIVER v. BURLINGTON AVIATION, INC.

[110 N.C. App. 519 (1993)]

any way defective. In fact, plaintiffs concede that carburetor icing is a common condition which occurs in any aircraft under certain meteorological and operational conditions. Plaintiffs do not contend that the aircraft functioned defectively or improperly under the circumstances. Instead, plaintiffs argue that the Information Manual prepared and distributed by Cessna omitted information concerning this common, dangerous propensity of the aircraft. Therefore, the "defective" product at issue is the manual, not the aircraft. Although the Legislature did not undertake to define what "products" are covered by Chapter 99B, G.S. § 99B-1(3) anticipates that a products liability action may include an action for personal injuries caused by or resulting from the "warning or instructing" of any product.

Since plaintiffs allege that the Informational Manual at issue was sold separately to the pilot, Neil Harris, the date of this sale is the crucial event triggering the statute of repose in G.S. § 1-50(6). This date has not been pled offensively or defensively by the parties at this time, and the trial court was therefore without sufficient facts to dismiss plaintiffs' action on this basis.

We have also reviewed plaintiffs' claims against Cessna for gross negligence, breach of express and implied warranties, strict liability, and intentional and negligent infliction of emotional distress. Plaintiffs' second Claim for Relief alleges gross negligence. The allegations describing defendant's acts and/or omissions in producing the manual are insufficient as a matter of law to indicate willful and wanton conduct "in conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 397 (1956). The trial court correctly dismissed plaintiffs' claim alleging gross negligence.

[4] In their Third and Fourth Claims for Relief, plaintiffs seek to assert claims for breach of express and implied warranties. They allege, however, that the Information Manual was sold by Cessna to Neil Harris, the pilot. Ordinarily, only the purchaser of a product may institute a claim for liability based upon a breach of an express or implied warranty. *See* N.C. Gen. Stat. §§ 25-2-313 through 25-2-315 (1986). Apparently, plaintiffs contend that they are third party beneficiaries of an alleged express or implied warranty existing between Cessna and Harris. Pursuant to G.S. § 25-2-318 the seller's warranty extends "to any natural person who is in the family or household of his buyer or who is a guest in his home . . . ." Plaintiffs do not allege that any relationship of the type required

by the statute existed at the time of the crash. Therefore, plaintiffs are not entitled to relief based upon these theories as a matter of law. *See Williams v. General Motors Corp.*, 19 N.C. App. 337, 198 S.E.2d 766, *cert. denied*, 284 N.C. 258, 200 S.E.2d 659 (1973).

[5] Likewise, plaintiffs' Fifth Claim for Relief purporting to state a claim for strict liability is without legal merit. Plaintiffs allege that the failure of Cessna to provide adequate warnings and instructions in the Information Manual "constitutes a defective condition and inherently an unreasonably dangerous activity." To date, however, the North Carolina courts have limited the imposition of strict liability to ultrahazardous activities. *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). The Court in *Woodson* distinguished inherently dangerous activities from ultrahazardous ones:

> The likelihood of serious harm arising from inherently dangerous activities is less than that associated with ultrahazardous activities, and proper safety procedures can substantially eliminate the danger. Unlike ultrahazardous activities, inherently dangerous activities are susceptible to effective risk control through the use of adequate safety precautions.

*Id.* at 351, 407 S.E.2d at 234. Based upon this distinction, the Court affirmed the principle that liability for injuries caused by inherently dangerous activities is not strict, but based on negligence. *Id.* We have already determined that plaintiffs have stated a claim for negligence against Cessna; however, we hold that the law in this State does not support plaintiffs' claim for strict liability based upon these allegations.

[6] In their Sixth Claim for Relief, plaintiffs purport to assert a claim for intentional infliction of emotional distress alleging that Cessna's conduct is "extreme and outrageous and indicates a reckless indifference to the likelihood that their conduct would cause severe, emotional distress." We hold as a matter of law, however, that Cessna's conduct, as alleged in the amended complaint, falls short of that which would be sufficiently outrageous to support a claim for intentional infliction of emotional distress. Furthermore, plaintiff does not allege any intent on the part of Cessna in causing harm to plaintiff. *See Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

By their Seventh Claim for Relief, plaintiffs seek to recover for negligent infliction of emotional distress. Plaintiffs allege that

NORTHWESTERN FINANCIAL GROUP v. COUNTY OF GASTON

[110 N.C. App. 531 (1993)]

Cessna's negligence actually and proximately caused each of them to suffer severe emotional distress. As we have already stated, the complaint is sufficient to allege a claim for relief for damages due to Cessna's negligence. North Carolina law allows recovery for emotional injury inflicted negligently, and plaintiffs' allegations, taken as true, are sufficient to state a claim for relief based on this theory. *See Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990).

In summary, we hold that plaintiffs' amended complaint is sufficient to state claims for relief for negligence and negligent infliction of emotional distress, and the trial court's order dismissing plaintiffs' action with respect to these claims is reversed. The trial court's order dismissing the remaining claims alleged in the amended complaint is affirmed. This case is remanded to the Superior Court of Alamance County.

Affirmed in part, reversed in part, and remanded.

Judges JOHNSON and GREENE concur.