### W. A. WILSON v. LOWE'S ASHEBORO HARDWARE, INC. AND MICHIGAN LADDER COMPANY.

(Filed 14 June 1963.)

**1. Appeal and Error § 19—**

　　An assignment of error must be supported by an exception duly noted in the record.

---

WILSON *v.* HARDWARE, INC.

---

**2. Evidence § 48—**

A witness with more than thirty years experience in working with woods, especially pine woods, and who is found by the court to be an expert craftsman in the use of wood for manufacturing purposes, is competent to testify that yellow pine is stronger than white pine.

**3. Appeal and Error § 41—**

The admission of testimony of a witness not qualified to speak on the particular subject is not prejudicial error when such testimony merely corroborates other evidence admittedly competent.

**4. Sales § 16—**

A manufacturer is not an insurer of the safety of chattels designed and manufactured by it but is under obligation to those who use his product to exercise that degree of care in its design and manufacture which a reasonably prudent man would use in similar circumstances.

**5. Same—**

Evidence tending to show that plaintiff was injured when a stepladder manufactured by defendant broke while he was using it, that the side rail that broke was made of wood specifically declared unfit for that purpose by the code voluntarily adopted by defendant as a guide and the groove or mortise was cut deeper than permitted by such code, and that these failures to comply with the code requirements could have been discovered upon reasonable inspection, is sufficient to overrule nonsuit on the issue of defendant's negligence.

**6. Negligence § 1;   Evidence § 36—**

A safety code voluntarily adopted by the manufacturer of a particular device as a guide to be followed for the protection of the public in the design and manufacture of such article is at least some evidence that a reasonably prudent person would have adhered to the requirements of such code.

HIGGINS, J., dissents.

APPEAL by defendant Michigan Ladder Company from *Johnston, J.,* November 1962 Term of RANDOLPH.

Michigan Ladder Company (hereafter Michigan) manufactures and sells stepladders. Lowe's Asheboro Hardware, Inc. (hereafter Hardware) purchased a quanity of ladders produced by Michigan. Plaintiff purchased one of these ladders. It broke when plaintiff was using it to take down some light bulbs. He was thrown to the ground. This action is to recover damages for injuries sustained in the fall.

Liability of Hardware was predicated on an alleged warranty of fitness. At the conclusion of plaintiff's evidence he submitted to a nonsuit as to Hardware.

Liability of Michigan is based on allegations of negligence in producing and selling a product dangerous to one using it in the customary manner. Issues of negligence, contributory negligence, and damages arising on the pleadings were submitted to a jury. It answered the issue of negligence in the affirmative, contributory negligence in the negative, and assessed damages.

Michigan appealed from the judgment rendered on the verdict.

*Miller & Beck by Adam W. Beck for plaintiff appellee.*

*James H. Pou Bailey and George R. Ragsdale for defendant appellant.*

RODMAN, J.  Michigan has three assignments of error: The first two challenge the competency of evidence admitted over its objection; the third is to the refusal of the court to allow its motion to nonsuit.

Plaintiff charges Michigan with negligence in (1) manufacturing the ladder from coarse grained pine of insufficient strength for a ladder of its type; (2) constructing the steps and rails from wood of insufficient thickness; and (3) cutting the grooves for insertion of the steps in the rail deeper than necessary or proper in ladders of the kind and size purchased by plaintiff.

Plaintiff, without objection, offered in evidence "American Standard Safety Code for Portable Wood Ladders." The sponsors for this code are American Ladder Institute, American Society of Safety Engineers, and National Association of Mutual Casualty Companies. The ladder which plaintiff purchased is described in that code as type 3. The superintendent of production and purchasing agent for Michigan testified that Michigan "follows that code in the production of its type 3 ladder."

Table 1 of that code is a "Classification of Various Species of Wood Acceptable for Use in Ladders." It classifies timbers suitable for that purpose in four groups. Group 1 lists the strongest. Group 2 woods have less strength than group 1, but they are stronger than woods in groups 3 and 4. Yellow pine is in group 2. White pine is in group 4.

Hal Garner, witness for plaintiff, testified that since 1925 he had been engaged in using lumber, building various structures such as cabinets, door frames, window frames, and during that period had used differing kinds of lumber, mostly pine, some oak and fir. Prior to 1925 he was engaged in sawmilling and had "worked with wood all my adult life." The court found the witness to be "an expert craftsman in the use of wood for manufacturing purposes." That holding is

not now challenged. He was asked over defendant's objection if he knew what kind of wood the ladder was made of. He answered pine. The objection then made is not assigned as error. He then proceeded without objection to say that one of the rails was yellow pine. The other was known as white pine, also known as spruce pine or loblolly pine. "The side rail that is not broken is the piece that is made out of yellow pine. As between those two kinds of wood, the broken piece is what we term as a spruce pine. It is different from yellow pine. I know what the difference is between the yellow pine and spruce pine."

The first and second assignments of error read: "The admission of the testimony of Hal Garner as to the identity of the wood from which the ladder was made and the relative strength of the two rails of the ladder." "The failure of the Court to strike out the testimony of Hal Garner."

Presumably the assignments are intended to relate to the following questions and answers appearing on pages 64 and 65 of the record: "Q. By reason of your experience in the woodworking industry and based upon your examination of the ladder identified as Exhibit 'AA', do you have an opinion which is satisfactory to yourself as to which of the side rails of this ladder is constructed from the stronger wood? A. Yes sir, I'd say the one that is not broken is the stronger piece of wood. Q. Why do you say that? A. It is a finer grain wood. Yellow pine is a stronger wood than white pine, I have always found by my experience. Q. Do you know what that is? A. The white pine is a softer, more spongier, brittle wood than yellow pine."

These assignments of error are not sufficient to comply with the rules of this Court. *Pratt v. Bishop,* 257 N.C. 486, 126 S.E. 2d 597; *Darden v. Bone,* 254 N.C. 599, 119 S.E. 2d 634. But even if sufficient, prejudicial error does not appear. The finding that the witness was an expert craftsman in the use of woods for manufacturing purposes, having spent more than thirty years in that kind of work, mostly in the use of pine, was sufficient to permit him to express his opinion as to whether the wood exhibited to him was or was not pine. His testimony to that effect appears on page 62 of the record. That testimony is not now challenged. His testimony that yellow pine is stronger than white pine is based on more than thirty years' experience in working with pine wood and accords with the statement appearing in the safety code which appellant claims to use as its standard in manufacturing ladders. Even if the witness had not been qualified to speak, testimony from one not qualified, which merely corroborates other evidence admittedly competent, would at most be harmless error, not warranting a new trial. *Bullin v. Moore,* 256 N.C. 82, 122 S.E. 2d 765;

*Hall v. Atkinson,* 255 N.C. 579, 122 S.E. 2d 200; *In re Will of Knight,* 250 N.C. 634, 109 S.E. 2d 470.

Did the court err in refusing to allow Michigan's motion for nonsuit?

To answer the question it is necessary to ascertain the legal obligation, if any, which a producer owes to those whom he expects to use or consume his product.

The rule to measure the producer's responsibility has been declared in a multitude of cases decided by this Court and appellate courts of sister states. A producer is not an insurer. His obligation to those who use his product is tested by the law of negligence. He must operate with that degree of care which a reasonably prudent person would use in similar circumstances. That care must be used in designing the article, *Swaney v. Steel Co., ante,* 531; in selecting proper materials with which to make the article, *Schubert v. J. R. Clark Co.,* 15 L.R.A. 818, *Heise v. J. R. Clark Company,* 71 N.W. 2d 818 (where a manufacturer of stepladders was held liable for using ponderosa pine in violation of the American Standard Safety Code); and finally he owes the duty of reasonable inspection to protect the user against hidden defects. *Gwyn v. Motors, Inc.,* 252 N.C. 123, 113 S.E. 2d 302; *Whiting v. Cheesebro-Whitman Co.,* 36 N.Y.S. 2d 4 (a stepladder case).

The subject of "products liability" is treated at length in the annotations following the cases of *Katz v. Arundel-Brooks Concrete Corp.,* 78 A.L.R. 2d 692, *Comstock v. General-Motors Corp.,* 78 A.L.R. 2d 449, and *Prashker v. Aircraft Corporation,* 76 A.L.R. 2d 78.

The evidence, viewed in the light most favorable to plaintiff, is sufficient for a jury to find these facts: The ladder was manufactured by defendant; it was purchased by plaintiff on 13 July. He was injured on 27 July. The ladder had not been subjected to any misuse or abuse during the two weeks intervening between the purchase and plaintiff's injury. The American Standard Safety Code for portable wood ladders provides: "This code is intended to prescribe rules and establish minimum requirements for the construction, care, and use of the common types of portable wood ladders, in order to insure safety under normal conditions of usage." Its declared purpose is "to provide reasonable safety for life, limb, and property." Defendant has adopted that code as a standard to govern it in the construction of ladders which it sells to the public. The code declares: "Mandatory rules of this code are characterized by the word 'shall.' If a rule is of an advisory nature, it is indicated by the word 'should' or is stated as a recommendation." Under the requirements for wood parts the code provides: "All wood parts shall be of the species specified in Table 1;

seasoned to a moisture content of not more than 15 percent; smoothly machined and dressed on all sides; free from sharp edges and splinters; sound and visibly free from sharp edges and splinters; sound and visibly free from shake, wane, compression failures, compression wood, decay, or other irregularities except as hereinafter provided. Low-density wood shall not be used." "All minimum dimensions and specifications set forth hereinafter for side rails and flat steps are based on the species of wood listed in Group 3 (Table 1) except where otherwise provided. The species of all other groups may be substituted for those of Group 3 when used in sizes that provide at least equivalent strength." Table 1 there referred to lists southern yellow pine in group 2. White pine and ponderosa pine are listed in group 4. The code divides stepladders into three types dependent upon the length and use intended. Plaintiff's ladder fits in a description of type 3. Under the heading "General Requirements" the code in sec. 4.2.1.4 provides: "Steps shall be closely fitted into grooves in the side rail $\frac{1}{8}$ inch in depth with a tolerance of $+\frac{1}{32}$ inch and $-0$ inch." The requirements for type 3 ladders are: "The minimum dimensions of the parts of the Type III step ladder shall be as follows when made of Group 2 or Group 3 woods.

|  | "Length 3 to 6 Feet Thickness (Inch) | Depth (Inches) |
|---|---|---|
| "Side Rails | $\frac{3}{4}$ | $3\frac{1}{2}$ |
| Back Legs | $\frac{3}{4}$ | $1\frac{5}{16}$ |
| Steps | $\frac{3}{4}$ | 3 |
| Top | $\frac{3}{4}$ | 5" |

The side rail which broke was made of wood listed in group 4, a wood not suitable under the code for that purpose. The code limits the depth of the groove in which steps are to be inserted to $\frac{5}{32}$ of an inch, but "the depth of the mortise cut at the rail break is $\frac{7}{32}$ of an inch on one side, $\frac{6}{32}$ of an inch on the other side." This excessive cutting reduced "the flexural rigidity by 28 percent. It would reduce the flexural strength, or, one other way to put it, is increase the flexural stress by 21 percent." These computations were made by plaintiff's witness Hardee, a structural engineer, found by the court to be an expert. Hardee further testified: "My opinion is that the fracture or failure occurred as a result of overstressed condition."

The jury might find, therefore, these infractions of the safety code: (1) The rail that broke was made of wood specifically declared unfit for that purpose. (2) The groove or mortise was cut deeper than permitted by the code. These grooves are cut by automatic machinery

which can be so regulated that the cut cannot exceed the desired depth. These failures to comply with the code requirements could have been discovered upon a reasonable inspection.

The voluntary adoption of a safety code as the guide to be followed for protection of the public is at least some evidence that a reasonably prudent person would adhere to the requirements of the code. *Stone v. Proctor, ante,* 633.

Here witnesses for plaintiff and for Michigan testified to the general recognition accorded the American Standard Safety Code for Portable Wood Ladders. The basic disagreement between the parties is not what is a proper rule of conduct but whether Michigan conformed to what it recognizes as such a rule. That of course required a weighing of the evidence, a jury function.

No error.

HIGGINS, J., dissents.