C. O. GORE, TRADING AS GORE GREENHOUSES v. GEORGE
J. BALL, INC.

No. 7013SC369

(Filed 13 January 1971)

1. Agriculture §§ 9.5, 10— sale of mislabeled tomato seeds — alleged violations of seed law — negligence — exemption from statute

In this action to recover lost profits allegedly sustained by reason of defendant's having supplied plaintiff with a grade of tomato seeds inferior to the grade ordered by plaintiff, it was unnecessary for the appellate court to decide whether alleged violations of the North Carolina Seed Law, G.S. Ch. 106, Art. 31, constituted negligence *per se*, where plaintiff's evidence discloses that defendant is within the exemption provided by G.S. 106-277.10(e).

2. Agriculture § 9.5; Negligence § 6— sale of mislabeled tomato seeds — res ipsa loquitur

Doctrine of *res ipsa loquitur* was inapplicable in an action to recover lost profits allegedly sustained by reason of defendant's having supplied plaintiff with a grade of tomato seeds inferior to the grade ordered by plaintiff, where the seeds were under the control of defendant's supplier part of the time, and it was not shown that mislabeling had not already occurred when defendant received the seeds.

Gore v. George J. Ball, Inc.

3. **Agriculture § 9.5— delivery of mislabeled, inferior grade tomato seeds — failure of seller to notify buyer — negligence**

Failure of defendant seed company to notify plaintiff, after receiving complaints from other customers, that tomato seeds delivered to plaintiff were mislabeled and an inferior grade to that ordered by plaintiff did not constitute negligence where the evidence discloses that defendant keeps no records of the particular source of seed used to fill a given order, there being no duty to maintain such records and defendant being unable to notify plaintiff in the absence of such data.

4. **Agriculture § 9.5; Negligence § 5; Sales § 22— sale of mislabeled tomato seeds — strict liability**

The doctrine of strict liability in tort, irrespective of negligence, does not apply to the sale of mislabeled tomato seeds.

5. **Uniform Commercial Code § 3— nonapplicability to January 1966 sale**

Uniform Commercial Code has no bearing upon action based upon sale of tomato seeds which occurred in January 1966.

6. **Agriculture § 9.5; Contracts § 27— delivery of inferior grade tomato seeds — breach of contract — sufficiency of evidence**

Plaintiff's evidence was sufficient to be submitted to the jury on the issue of defendant's breach of contract in supplying plaintiff with a grade of tomato seeds inferior to the grade ordered by plaintiff.

7. **Contracts § 29— breach of contract — nominal damages**

If a breach of contract is established, the plaintiff would be entitled to nominal damages at least.

APPEAL by plaintiff from *Tillery, Judge of the Superior Court,* 5 January 1970 Session, COLUMBUS Superior Court.

Plaintiff instituted this civil action on 3 January 1968 to recover damages, consisting mainly of lost profits, allegedly sustained by reason of the defendant's having supplied plaintiff with a grade of tomato seeds inferior to the grade which plaintiff ordered. Plaintiff's claim for relief was grounded on theories of negligence, strict liability, and "complete failure of consideration and a breach of the contractual relationship between the parties." There followed a series of motions by defendant to dismiss for lack of personal jurisdiction, which were denied, and with which we are not concerned on this appeal by plaintiff. Defendant then filed an answer in which it admitted that on or about 1 January 1966 plaintiff mailed his order for seeds of a table variety known as "Heinz #1350," as described in defendant's catalogue, with his payment, and that the order was filled on 4 January 1966, as alleged in the complaint. All other material allegations were denied. In addition, the defendant asserted a

"Limitation of Warranty" which it alleged was printed in its catalogue, on the invoice, and on the seed packets, and which reads as follows:

### " 'LIMITATION OF WARRANTY

'Geo. J. Ball, Inc. warrants to the extent of the purchase price, that seeds, plants, bulbs, Growers' supplies and other materials and equipment sold are as described on the container within recognized tolerances. We give no other or further warranty, express or implied.' "

Plaintiff's evidence tended to show: Plaintiff's order was placed and filled, as alleged in the complaint and admitted in the answer; plaintiff planted the seeds in his greenhouses early in the year 1967; in April, 1967, plaintiff transplanted two acres of the plants to his field (hereinafter called the "first crop"); in May, 1967, plaintiff transplanted an additional two acres (hereinafter called the "second crop"); when young tomatoes appeared on the vines, plaintiff became concerned at their unusual shape; plaintiff contacted agents of defendant and requested them to inspect his crop, which they declined to do; the tomatoes on plaintiff's vines were identified, by a member of the faculty of the Department of Horticulture, North Carolina State University, as a "paste-type" tomato, which is suitable only for the manufacture of catsup and like products, and not for table use; plaintiff allowed the first crop to mature and sold part of them; plaintiff destroyed the second crop and replaced them with plants obtained from a local nursery; plaintiff's intention in 1967 was to raise six acres of tomatoes from the seed purchased from defendant, and he had prepared six acres of land; various varieties of tomato seeds are indistinguishable by physical inspection; defendant obtained the seed from Ferry Morse Seed Company, a west coast producer, in a five-pound lot; defendant received an invoice from Ferry Morse Seed Company showing the origin, kind and variety of the lot of seed as "Heinz 1350"; in August, 1966, defendant received several complaints from other customers that the seed in the lot were not "Heinz 1350"; upon receiving the complaints, defendant grew a "greenhouse test" and thereby verified that the tomatoes produced from the lot of seed in question were of the paste type; defendant keeps no record as to which lot of seed each particular customer's order is taken from; defendant's label was based upon the tag which Ferry Morse Company attached to the lot of seed and

which identified them as "Heinz 1350"; defendant's packaging and labeling procedure involves "five checks between the label that Ferry Morse has on the bag and the label that we put on the packet as it goes to the customer."

At the close of plaintiff's evidence, the trial court granted defendant's motion for a directed verdict, on the ground that the plaintiff had failed to offer evidence of negligence, or of total failure of consideration.

*Powell, Lee & Lee, by J. B. Lee for plaintiff-appellant.*

*Marshall, Williams & Gorham, by Lonnie B. Williams for defendant-appellee.*

BROCK, Judge.

Plaintiff's exception No. 21 is to the granting of defendant's motion for a directed verdict.

Plaintiff's evidence does not disclose any negligence on the part of defendant in its handling, packaging, or labeling of the seed.

[1] Plaintiff contends that defendant has, in certain respects, violated G.S. Chap. 106, Article 31, entitled "North Carolina Seed Law," and that said violations constitute negligence *per se.* Our cases which hold that the violation of a statute constitutes negligence *per se* deal with statutes designed for the protection of the health or safety of persons or property. See Byrd, *Proof of Negligence in North Carolina,* 48 N.C.L. Rev. 731 (1970). While certain provisions of Article 31 are concerned with the treatment of seed with poisonous chemicals, plaintiff does not seek a remedy for a violation of those provisions. In any event, it is not necessary for us to decide whether a violation of the statute, in the respects alleged by plaintiff, constitutes negligence *per se,* because plaintiff's evidence discloses that defendant is within the exemption provided by G.S. 106-277.10(e).

[2] Plaintiff contends that the doctrine of *res ipsa loquitur* required submission of the case to the jury. For the doctrine of *res ipsa loquitur* to apply, three elements must coalesce: (1) there must be an injury; (2) the occurrence causing the injury must be one which ordinarily does not happen without negligence on the part of someone; and (3) the instrumentality which

caused the injury must have been under the exclusive control and management of the defendant. *Jackson v. Gin Co.*, 255 N.C. 194, 120 S.E. 2d 540. Plaintiff's proof fails in respect to the third element. The seed was under the control of Ferry Morse Seed Company part of the time, and it is not shown that the mislabeling had not already occurred when defendant received the lot of seed.

[3]  Plaintiff contends that defendant's failure to notify him, after receiving complaints from other quarters that the seeds were mislabeled, constitutes negligence. The evidence discloses that defendant keeps no records of the particular source of the seed used to fill a given order. We cannot say that there is a duty to maintain such records, at least as to such a harmless product as tomato seed. Defendant could not be expected, in the absence of such data, to notify plaintiff some seven months after the sale.

[4]  Plaintiff contends that liability should be imposed upon defendant under a theory of strict liability in tort, irrespective of negligence. We find no basis in the law of this jurisdiction for predicating liability on such a theory, on the facts of this case. We think the language of the court in *Wilson v. Hardware, Inc.*, 259 N.C. 660, 131 S.E. 2d 501, is appropriate: "A producer is not an insurer. His obligation to those who use his product is tested by the law of negligence. He must operate with that degree of care which a reasonably prudent person would use in similar circumstances."

We hold that the trial judge was correct in directing a verdict for the defendant in each of the plaintiff's causes of action grounded in tort.

[5]  Plaintiff contends that if he is not entitled to have the case submitted to the jury upon the questions of tort liability, nevertheless his evidence was sufficient to require submission of the case to the jury upon the theory of breach of contract. The transaction occurred in January 1966; therefore the Uniform Commercial Code has no bearing upon this case. G.S. 25-10-101.

[6, 7]  In our opinion the plaintiff's evidence, when taken in the light most favorable to him, would justify the jury in finding a breach of contract. If a breach of contract is established

the plaintiff would be entitled to nominal damages at least. 2 Strong N. C. Index 2d, Contracts, § 29, p. 339.

Insofar as the judgment entered directs a verdict in favor of the defendant upon plaintiff's cause of action for breach of contract the same is reversed and this cause is remanded to the Superior Court of Columbus County for trial upon plaintiff's allegations of breach of contract.

Error and remanded.

Judges MORRIS and VAUGHN concur.