RUTH MOORE LEE v. BILL T. ROWLAND, D/B/A ROWLAND TRUCK-
ING AND GRADING COMPANY, AND EUGENE WILLIAM ADAMS

No. 7110SC69

(Filed 28 April 1971)

1. Appeal and Error § 39— failure to docket record in apt time

Appeal is subject to dismissal for failure to docket the record
on appeal within the time required by Court of Appeals Rule 5 where
the record on appeal was docketed more than 90 days after the date
of the judgment appealed from and no order extending the time for
docketing appears of record.

2. Rules of Civil Procedure § 50— motion for directed verdict — failure to
state rule number

Defendants' motions for a directed verdict failed to comply with
Rule 6 of the General Rules of Practice for the Superior and District
Courts Supplemental to the Rules of Civil Procedure where the motions
failed to state the rule number under which they were made.

3. Sales § 22— negligence in modification of truck — liability of seller

One who sells a truck which he has modified by welding to the
body of the truck a steel brace of his own design is liable to those he
should expect to be in the vicinity of the truck for injuries caused by
defects in the design and weld of the steel brace when the truck is
being used in the manner for which it was intended.

4. Automobiles § 68; Sales § 22— defective addition to truck — negligence
of former owner — failure of present owner to inspect

In an action for injuries allegedly sustained by plaintiff when a
steel brace which had been welded to a dump truck by its former owner
fell from the truck and was propelled through the windshield of plain-
tiff's car, plaintiff's evidence was sufficient to require submission to
the jury of issues (1) as to the negligence of the former owner in the
design and installation of the steel brace, and (2) as to the negligence
of the present owner in failing properly to inspect the altered truck
and to discover and remedy the defective condition of the brace.

APPEAL by plaintiff from *Cowper, Superior Court Judge,*
August 1970 Regular Civil Session of Superior Court held in
WAKE County.

In the complaint plaintiff alleges that she was injured and
damaged by the actionable negligence of both Bill T. Rowland
(Rowland) and Eugene William Adams (Adams). She alleges
that Adams was negligent, among other things, in designing
and welding braces to the top of the dump body of the 1966
model truck owned by him and subsequently bought and used

Lee v. Rowland

by Rowland; that Rowland was negligent, among other things, in failing to inspect the truck and in failing to discover and remedy the defective condition of the welded braces; and that as a result of the negligence of Adams and Rowland, a brace fell off the truck while it was being operated on a public street by Rowland's agent and struck the wheels of the truck, which propelled the brace through the windshield of plaintiff's oncoming vehicle, striking her on the head.

At the close of plaintiff's evidence, both defendants moved for a directed verdict "on the grounds of no negligence." From the entry of the judgment allowing the motions of the defendants, the plaintiff appealed, assigning error.

*Bailey, Dixon, Wooten & McDonald by Wright T. Dixon, Jr., and John N. Fountain for plaintiff appellant.*

*Smith, Anderson, Dorsett, Blount & Ragsdale by C. K. Brown, Jr., for defendant appellee Rowland.*

*G. Earl Weaver for defendant appellee Adams.*

MALLARD, Chief Judge.

[1, 2] The judgment in this case is dated 4 August 1970. The record on appeal was docketed in the Court of Appeals on 13 November 1970, which was more than 90 days after the date of the judgment. No order extending the time for docketing appears of record. The appeal is subject to dismissal for failure to docket within the time required by Rule 5 of the Rules of Practice in the Court of Appeals. The motions of the defendants for a directed verdict were insufficient. By failing to state the rule number under which the parties were making their motions, they did not comply with Rule 6 of the General Rules of Practice for the Superior and District Courts Supplemental to the Rules of Civil Procedure adopted by the Supreme Court of North Carolina pursuant to G.S. 7A-34. However, none of the parties have raised either of these questions, and we treat the appeal as a petition for a writ of *certiorari*, allow it, and consider the case on its merits.

Briefly stated, the evidence, admission, and stipulations tended to show: On 29 May 1969 at about noon, Ruth Moore Lee was operating her automobile southwardly on Peartree Road, a public street in the City of Raleigh. Peartree Road had

Lee v. Rowland

a posted speed limit in that area of 35 miles per hour and, although paved, was "a rough road." A 1966 model truck with a dump body (used for hauling asphalt, owned by defendant Rowland, and being operated northwardly by his agent at a speed of about 25 or 30 miles per hour) was meeting plaintiff's vehicle. Adams, former owner of the truck, had altered it by welding two steel braces along the top outside edge of the metal dump body to hold boards in place on top of the body which thus increased the load capacity of the truck. (The evidence does not reveal the date this was done or when Adams owned or sold the truck.) At the time of the occurrence complained of, Rowland's truck was empty and was "bouncing" along the road. Plaintiff's Exhibit 1, which was a flat piece of metal, fell off the dump truck, struck one of the truck wheels, was propelled through the windshield of plaintiff's oncoming automobile, and struck plaintiff in the head, causing injuries. (Although the record does not so indicate, when weighed, this piece of metal weighs slightly over one and one-quarter pounds, is roughly one-half inch thick, and measures about three inches across.) Plaintiff's expert witness in the field of welding referred to this metal brace as a "pad" and testified:

> "What happens to the metals when you make the weld with similar metals is through the application of intense heat and through a filler metal, electrode, you melt the two pieces of metal to be joined and apply filler metal to bridge the opening and build up the weld, so to speak, to maximum size. As to whether there is an actual flowing of the metal, the metal at the point of application of heat, it is made into a liquid moulten state in which you cause the two pieces of metal to be joined, plus the filler metal to flow as one. The weld that has been applied is commonly known as a welding bead.
>
> Looking at Plaintiff's Exhibit No. 1, I have seen it before. * * * There is a bead on there. It is located in this particular area here (indicating). It is at one end of the piece of metal. The bead that is there is a little erratic in size and shape and not very consistent as to penetration. When I say not consistent as to penetration, I mean it is not uniform in thickness and width and depth. Non-consistency means that when you go down into a thin area, you leave a weak spot along the length of the bead.
> 　　　*　　　*　　　*

\* \* \* This is a weld from an overhead position. The fact that a weld is in an overhead position doesn't make any difference in the weld when it is properly applied. The uniformity of the weld and the penetration of the weld would make a difference in the overhead weld. As to whether it would affect it more in an overhead weld than it would a weld below, an irregular weld makes a contribution to weakness in any position.

As to whether the joint weld design that I have testified to and diagramed on the board is adequate, in my opinion, due to the amount of stress and strain that is placed against the pad and inasmuch as the pad is placed in a root bend position and the weakest fatigue factor, it was inadequate to withstand the load for which it was designed."

Plaintiff contends that the trial court committed error in allowing the motion of Adams for a directed verdict. She also contends that the act of Adams in designing and attaching the brace in the manner as shown by the evidence, admission in the pleadings, and stipulations constituted negligence.

In 6 Strong, N. C. Index 2d, Sales, § 22, it is said:

"The liability of a seller or manufacturer for resulting injuries when he knows that the article is to be used for a specific purpose, when by reason of defective construction injury may be reasonably apprehended from such use, rests upon general principles of negligence and does not arise out of the contract. \* \* \*

\*      \*      \*

A manufacturer is not an insurer of the safety of chattels designed and manufactured by him, but is under obligation to those who use his product to exercise that degree of care in its design and manufacture which a reasonably prudent man would use in similar circumstances. Thus, the manufacturer is liable to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for injuries caused by defects in the chattel in its use in the manner for which it was supplied, when such injury could have been reasonably anticipated."

The question of a manufacturer or seller's liability for injury to third persons has been recently determined in *Dupree*

*v. Batts*, 276 N.C. 68, 170 S.E. 2d 918 (1969). There it was alleged that The Chrysler Corporation, one of three defendants, was negligent in manufacturing and placing on the market a defective automobile which broke down under road use. At the conclusion of plaintiff's evidence, the trial court entered judgment dismissing the action as to all defendants. Plaintiff's evidence tended to show that one of the other defendants placed an oversized, unbalanced tire on the right rear wheel of the vehicle sold by Chrysler which would cause the vehicle to shimmy and vibrate during road use. This wheel broke down on a curve, and the driver admitted he was driving at a speed of 60 miles per hour in a 55 miles per hour zone. The evidence tended to show that this wheel broke loose when the five lug nuts pulled through and ruptured the metal hub which attached the rim to the axle, that the type of metal used in the structure of the damaged wheel was of the softest and weakest commercially available grade of steel, and that it contained non-metallic impurities and slag inclusions which made the wheel less resistant to deformation. The impurities could have been discovered by an inspection at the time of manufacture. In holding that the evidence was sufficient to go to the jury, the Court said:

> " * * * The use of a stronger steel, free of impurities, or the use of a greater thickness of the type used would have increased the load-carrying capacity of the wheel and could or might have prevented the loss of the wheel.
>
> A manufacturer's negligence may be found over an area quite as broad as his whole activity in preparing and selling the product or in designing the article—*Corprew v. Chemical Corp.*, 271 N.C. 485, 157 S.E. 2d 98; Negligence may arise by selecting materials for use in the manufacturing process—*Wilson v. Hardware Co.*, 259 N.C. 660, 131 S.E. 2d 501; . . . (I)n failing to make reasonable inspection for hidden defects—*Gwyn v. Motors, Inc.*, 252 N.C. 123, 113 S.E. 2d 302."

The case of *Kalinowski v. Truck Equipment Co.*, 237 App. Div. 472, 261 N.Y.S. 657 (1933), approaches the circumstances of the case before us. There the defendant Truck Equipment Company rebuilt a truck belonging to another defendant. Subsequently, the rear axle broke as the truck was being driven down a street, and a wheel came off, injuring the infant plaintiff who was walking down a sidewalk. The question decided was

whether the repairing company should have anticipated that a broken axle, resulting from failure to use proper material or do proper work, was reasonably likely to cause injury to lawful users of the streets. The court, in holding that it was a question for the jury, said:

> "The situations of this plaintiff and the truck were neither strange nor remote from reasonable expectation—the girl walking along a public sidewalk, the truck being driven along a public street. Negligence (under the pleading) caused the truck to break down. The sequel was something unusual, but was of a type which might be expected. And that is the test."

In 2 Restatement of Torts 2d, § 404, the rule is stated:

> "One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels."

[3] In this case Adams, the seller and the one who modified the truck body by designing and welding the steel brace in question to the body of the truck, is in a position analogous to a repairman and a manufacturer and is liable to those whom he should expect to be in the vicinity of the truck for injuries caused by defects in the design and weld of the steel brace when the truck was being used in the manner for which it was intended, if such injury could have been reasonably foreseen.

[4] We are of the opinion and so hold that the evidence was sufficient to require submission of an issue to the jury as to the negligence of Adams in designing and installing an inadequate brace on the truck. Whether Adams used that degree of care in designing and installing the brace which a reasonably prudent person would use in similar circumstances, whether the inadequate installation and design of the brace was a proximate cause of plaintiff's injuries, and whether it was foreseeable that this brace, if improperly designed and welded to the body of the truck, might fall off and be propelled through the windshield of plaintiff's automobile, injuring her, are questions for the jury.

Plaintiff contends that the trial court committed error in allowing Rowland's motion for a directed verdict. She asserts

that Rowland was negligent in failing to properly inspect the altered truck and in operating it over a rough road equipped with a defectively designed and installed brace.

In 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 699, p. 249, it is said:

"The owner or operator of a motor vehicle is not liable for injuries resulting from the defective condition of such vehicle in the absence of negligence on his part, unless a statute so imposes liability. But although, in the absence of such a statute, he has no absolute duty to other users of the highway to see that the vehicle is in a safe and proper condition, he is required to exercise reasonable care to see that the vehicle is in such condition, and is generally held liable for injuries which are shown to have resulted from the operation of the vehicle which he knew, or in the exercise of reasonable care ought to have known, was in such an unsafe condition as to endanger others. The owner or operator of a motor vehicle must exercise reasonable care in the inspection of the vehicle to discover any defects that may prevent its proper operation, and is chargeable with knowledge of any defects which such inspection would disclose."

In 2 Blashfield Auto Law 3rd Ed., § 107.3, p. 459, the rule with respect to the duty to inspect a motor vehicle is stated in the following language:

"The owner or driver of a motor vehicle owes to himself and to others a duty of inspection. He must exercise reasonable care in this inspection to discover any defects which may prevent the proper operation of the vehicle, and is chargeable with knowledge of any defects which such inspection would disclose."

[4] The evidence in this case tended to show that the truck was empty and that no pressure was being exerted against the brace by virtue of a load on the truck. The truck was traveling at a speed of about 25 or 30 miles per hour over a rough asphalt road when the brace apparently fell off. From these and the other circumstances the jury could have reasonably inferred that the brace had gradually become loose because of the inadequacy of its design and installation, that the defendant Rowland had failed to exercise reasonable care in the inspection of

the vehicle and failed to discover and remedy the defective condition of the brace. Absent negligence in inspection, operation, or maintenance, a large piece of metal such as struck the plaintiff in this case does not ordinarily fall off an empty truck being operated over a rough asphalt road. The circumstantial evidence is sufficient to require submission to the jury of an issue as to Rowland's negligence on the questions of whether he failed to exercise reasonable care in the inspection of the vehicle and whether he failed to discover and remedy the defective condition of the brace.

Plaintiff has other assignments of error, some of which may have merit; but in view of our disposition of the case, we do not consider them.

We hold that the case should have been submitted to the jury and that the court committed error in allowing the motions of the defendants for a directed verdict.

Reversed.

Judges PARKER and GRAHAM concur.