GENE P. FOWLER, ANNE B. FOWLER AND ST. PAUL FIRE AND MARINE IN-
SURANCE COMPANY v. GENERAL ELECTRIC COMPANY

No. 7810SC380

(Filed 20 March 1979)

1. **Negligence § 5; Sales § 22— strict liability —inapplicability to product design**
    The doctrine of strict liability in tort is inapplicable in an action against a manufacturer based on defects in design.

2. **Sales § 6— implied warranty —mechanical device —privity of contract**
    Absent privity of contract, no action will lie in North Carolina for breach of implied warranty of a mechanical device.

3. **Sales § 5— icemaker —no express warranty**
    The trial court properly entered a directed verdict for defendant manufacturer in an action for breach of express warranty of a refrigerator icemaker where plaintiffs presented no evidence tending to show that any warranties were addressed directly to them.

Fowler v. General Electric Co.

**4. Sales § 22— alleged negligence in product design — instruction on failure to warn consumer**

  In an action to recover for damages from a fire allegedly caused by the negligence of defendant manufacturer in designing a refrigerator icemaker without an effective automatic thermostat, the trial court erred in instructing the jury on negligence by the manufacturer in failing to warn the user of a product dangerous for the use for which it was intended, since the icemaker was not an inherently dangerous product, and the duty to warn theory does not apply where, as here, there is such a defect in product design that it is dangerous *per se* to use as intended and the only way a consumer can protect himself from injury or damage is to abstain from using it; rather, the trial court should have instructed the jury on the duty of the manufacturer to exercise reasonable care in adopting a design for its icemaker which would make it safe for the use for which it was intended.

APPEAL by plaintiffs from *Herring, Judge.* Judgment entered 20 September 1977, in Superior Court, WAKE County. Heard in the Court of Appeals 1 February 1979.

On 28 December 1971, a fire damaged the home of the plaintiffs Gene P. Fowler and Anne B. Fowler. St. Paul Fire and Marine Insurance Company had insured the Fowler's home against fire damage and reimbursed the Fowlers for damages to their house and belongings caused by the fire in the amount of $61,429.34. Approximately $5,000 worth of items was not compensated for by the insurance.

On 27 December 1974, plaintiffs brought this action against General Electric to recover the total amount of damages sustained in the fire. The complaint alleged that the fire was caused by a defective icemaker in the refrigerator, which was manufactured by defendant. The refrigerator had been purchased for the Fowlers by the builder of their house Lacy Buffaloe. Plaintiffs alleged three theories of recovery: (1) negligence, (2) breach of warranty, express and implied, and (3) strict liability. Defendant, in its answer, denied negligence and asserted as a defense that plaintiffs lacked privity of contract with the defendant.

At trial, plaintiffs presented evidence which tended to show that the house suffered the most extensive damage in the kitchen area where the refrigerator was located. Lindsey Sink, qualified as an expert in refrigeration, icemakers, and the investigation of electrical appliance fires, testified that he examined the refrigerator and icemaker, on behalf of defendant, several days

after the fire. In his opinion, the fire was caused by a defective and unsafe icemaker in the refrigerator. The icemaker was defective in that it did not contain a positive off thermostat but a different type of safety thermostat which reset itself. When the icemaker malfunctioned, the thermostat continued to cycle on and off gradually building up heat until it ignited the wiring, the plastic parts in the icemaker and the plastic tube leading from the icemaker out the rear of the refrigerator next to the wall. According to Sink, the positive off thermostat would cut off all power to the icemaker and prevent a buildup of heat.

On cross-examination, Mr. Fowler admitted that he was not a party to any negotiations between Lacy Buffaloe and defendant.

At the close of plaintiffs' evidence, defendant moved for a directed verdict on the claims of breach of express and implied warranty and strict liability. The court granted defendant's motions and from those orders, plaintiffs appeal.

The defendant presented a report of the fire, submitted to defendant by the plaintiffs' witness, Lindsey Sink, while he was an employee of defendant. In the report, Sink stated that he was unable to determine the cause of the fire and did not think it was caused by a defect in the refrigerator or icemaker. Charles Ferriell, duly qualified as an expert in refrigerators and icemakers, testified that the 1971 components of the refrigerator and icemaker complied with the standards set by the Underwriters Laboratory, which sets safety standards for various products. The icemaker did contained a safety thermostat which functioned only when the icemaker malfunctioned. If the icemaker permanently stalled, the safety thermostat would prevent any ice from being formed.

The court submitted the case to the jury on the issue of negligence, and the jury found for defendant. Plaintiffs appeal from the judgment in favor of defendant.

*C. K. Brown, Jr. and Blanchard, Tucker, Twiggs & Denson by Charles F. Blanchard for plaintiff appellants.*

*Smith, Anderson, Blount & Mitchell by Samuel G. Thompson for defendant appellee.*

CLARK, Judge.

To clarify the issues raised on appeal we note that this case involves the liability of the manufacturer for defective product design. There was no privity between plaintiff-consumers and defendant-manufacturer, and there was no express warranty by the manufacturer.

In their complaint the plaintiffs rely on (1) negligence, (2) breach of warranty and (3) strict liability. The trial court directed a verdict for defendant on the issues of strict liability and breach of warranty, and submitted to the jury the issue of negligence, and plaintiffs assign as error these rulings.

## 1. Strict Liability

[1] North Carolina has not embraced the doctrine of strict liability in tort. In *Wilson v. Hardware, Inc.*, 259 N.C. 660, 131 S.E. 2d 501 (1963), the court noted: "A producer is not an insurer. His obligation to those who use his product is tested by the law of negligence." *Id.* at 664, 131 S.E. 2d at 503. *See, Gore v. George J. Ball, Inc.*, 10 N.C. App. 310, 178 S.E. 2d 237, *modified on other grounds*, 279 N.C. 192, 182 S.E. 2d 389 (1971).

Nor have other jurisdictions embraced strict liability against a manufacturer for defects in design. "Admittedly, some courts in recent years have insisted, perhaps foolishly, that manufacturers are being held strictly liable for their design choices independently of whether these choices were unreasonable. The proof required of plaintiffs in those cases, however, is basically the same as would be required in a negligence case. . . . The justification for eliminating strict liability in design cases also rests on the anticipated impact upon claims against manufacturers. For one thing, eliminating further talk of 'strict liability' in cases in which the concept is so clearly inapplicable should help to eliminate some of the confusion in judges' and lawyers' minds regarding a range of issues that recur in design cases." Henderson, *Manufacturers' Liability For Defective Product Design: A Proposed Statutory Reform*, 56 N.C.L. Rev. 625, 634-635 (1978).

This assignment of error is overruled.

## 2. Breach of Warranty

[2]   Defendant contends that the directed verdict was properly granted since no action for breach of implied warranty will lie in North Carolina, absent privity of contract. *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21 (1960). In *Byrd v. Star Rubber Co.*, 11 N.C. App. 297, 181 S.E. 2d 227 (1971), the plaintiff brought an action against a tire manufacturer for damages caused when a defective tire exploded. The purchaser of the tire was the plaintiff's employer, and therefore there was no privity of contract between the parties. The court held that there could be no recovery for breach of warranty unless the parties were in privity of contract. The court noted that, although the privity requirement in this State has been somewhat eroded, the Supreme Court of North Carolina has limited the exceptions to the privity requirement to warranties on food, drink, and insecticides in sealed containers. *See, e.g., Corprew v. Geigy Chemical Corp.*, 271 N.C. 485, 157 S.E. 2d 98 (1967); and *Terry v. Double Cola Bottling Co.*, 263 N.C. 1, 138 S.E. 2d 753 (1964). Since the case *sub judice* concerns a defect in a mechanical object, similar to *Byrd v. Star Rubber Co.*, *supra*, it does not fall into the recognized exceptions to the privity requirement. Therefore the rule set forth in *Wyatt v. Equipment Co.*, *supra*, and *Byrd v. Star Rubber Co.*, *supra*, remains the applicable law in this case. The court did not err in directing a verdict in favor of defendant on the issue of breach of implied warranty.

[3]   Another exception to the rule that privity of contract is required in actions for breach of warranty is applicable when the manufacturer addresses a warranty directly to the ultimate consumer or user of the product, thereby making an express warranty. *See, Tedder v. Pepsi-Cola Bottling Co.*, 270 N.C. 301, 154 S.E. 2d 337 (1967); *Simpson v. American Oil Co.*, 217 N.C. 542, 8 S.E. 2d 813 (1940). The plaintiffs in the case *sub judice*, however, presented no evidence which tended to show that any warranties were addressed directly to them. Therefore, the court did not err in directing a verdict in favor of defendant on the issue of breach of express warranty.

## 3. Negligence

[4]   The crux of plaintiffs' evidence of defendant's negligence in the design of the icemaker is the testimony of Lindsey Sink, former employee of defendant, that the icemaker was defective in that it did not have a positive off thermostat; that the safety ther-

mostat on the icemaker was not designed to cut off the power permanently; and that in his opinion the cause of the fire was the failure of the safety thermostat to cut off the heater which warms the mold and releases the ice cubes into the storage pan; that the heater dehydrated the water in the icemaker, built up the heat in the mold housing, broke down the wiring insulation, caused the wiring to fuse and arc, burned the housing, and the fire spread from the housing.

The plaintiffs assign as error the instructions of the trial court on the first issue, the negligence of the defendant, contending that there was a failure to apply the law to the evidence as required by G.S. 1A-1, Rule 51, Rules of Civil Procedure.

The instructions to the jury, in pertintent part, on the first issue were as follows:

"Now, as to this issue, I instruct you, ladies and gentlemen, that a manufacturer of articles such as an icemaker or refrigerator has a duty to the purchasers and users of such article to exercise due care or reasonable care in the manufacture and design and creation or construction of such article as the ordinary, prudent person or manufacturer would have done in the exercise of due care.

\* \* \* \*

Now, in order to prevail upon this issue, the plaintiffs must prove—and I am referring to all three of the plaintiffs in this case—by the greater weight of the evidence the following things.

First, that the defendant-manufacturer knew or should have known that the icemaker and refrigerator in question was or was likely to be dangerous for the use for which it was supplied or manufactured and sold.

Second, that the manufacturer should have foreseen that reasonably prudent users of that item would not realize a dangerous condition existed in the unit, if you find such did exist.

Third, that the manufacturer failed to exercise reasonable care to inform the user of the facts which made the product dangerous for use for which it was intended.

And, fourth, that the plaintiffs suffered injury or damage as a proximate result of the negligence of the defendant.

* * * *

I instruct you, finally, ladies and gentlemen, as to the first issue that if you find that the plaintiffs Gene P. Fowler, Anne B. Fowler and St. Paul Fire and Marine Insurance Company have proved by the greater weight of the evidence that the defendant General Electric Company as manufacturer of the icemaker and refrigerator in question knew or should have known that the refrigerator and icemaker was or was likely to be dangerous for the use for which it was manufactured and sold, and that the manufacturer should have foreseen that reasonably prudent users would not realize a dangerous condition in the product and that the manufacturer failed to exercise reasonable care to inform the user of the facts which made that product dangerous for use for which it was intended and that the plaintiffs suffered damage as a proximate result of the negligence of the defendant-manufacturer, General Electric Company, then in such case, it would be your duty to answer this issue 'Yes', in favor of the plaintiffs."

In the first paragraph of the quoted instructions the court correctly instructed, at least partially, on negligence of the manufacturer in the design of his product, and in the succeeding paragraphs shifted to instructions on negligence of the manufacturer in failing to warn the user of a product dangerous for the use for which it was intended, using *verbatim* North Carolina Pattern Jury Instructions for Civil Cases, § 750.21.

The general function of warnings and instructions on use of the product is to supply information to individual consumers that is better provided by the manufacturer than obtained by independent sources. A warning is needed when consumers can take steps on their own behalf when they have notice that possible perils are associated with product use. The duty to warn applies to the labeling of poisons, to latent dangers, to the operation of complicated machinery, and to the special instructions needed for handling and preparation of toxic chemicals or inflammable substances. See Epstein, *Products Liability: The Search for the Middle Ground*, 56 N.C.L. Rev. 643, 653 (1978).

In the case *sub judice*, the icemaker was not an inherently dangerous product; the consumer could have taken no steps to protect himself from dangers in the use of the icemaker other than total abstention. The duty to warn theory does not apply to

a situation where there is such a defect in product design that it is dangerous *per se* to use as intended and the only way the consumer can protect himself from injury or damage is to abstain from using it. "The capacity for plaintiffs to invent duty to warn theories far exceeds the capacity of manufacturers to provide warnings to counter them. While some warnings should be given, efforts must be taken to prevent warnings and instructions from taking on a ritualistic purpose, immaterial in their influence on individual behavior but decisive in the way they shape liability." *Epstein, supra,* at 654.

The plaintiffs' case is based on the negligence of the defendant in designing the icemaker without an effective automatic thermostat. See Annot., 76 A.L.R. 2d 91 (1961); Annot., 80 A.L.R. 2d 598, 610 (1961).

In *Corprew v. Geigy Chemical Corp., supra,* the court held that plaintiff-farmer alleged causes of action against defendant-manufacturer of a chemical weed killer (1) for negligence in failing to warn of potential danger in the use of the product and (2) for breach of warranty. Parker, C.J., for the court, comprehensively reviewed the cases involving products liability based on negligence and quoted from Prosser, Law of Torts, 665 (3d Ed. 1964) as follows:

> " 'Since the liability is to be based on negligence, the defendant is required to exercise the care of a reasonable man under the circumstances. His negligence may be found over an area quite as broad as his whole activity in preparing and selling the product. He may be negligent first of all in designing it, so that it becomes unsafe for the intended use. . . .' "
> 271 N.C. at 491, 157 S.E. 2d at 102-103.

In *Corprew, supra,* North Carolina unequivocally abrogated the rule of *Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng. Rep. 402 (Ex. 1842) that no liability for negligence exists absent privity of contract.

In *Swaney v. Peden Steel Co.,* 259 N.C. 531, 131 S.E. 2d 601 (1963), plaintiff was injured when a steel truss fabricated by defendant collapsed because of a defect in design. Sharp, J., (now Chief Justice) for the Court, stated:

> "The defendant, as the designer and fabricator of the truss which collapsed during erection, was under the duty to exercise reasonable care not only to furnish a framework which would sustain the load it was intended to carry after

erection, but which would also withstand the ordinary stresses to which it would be subjected during erection by methods reasonably to be anticipated. If a negligently designed truss were furnished, a workman on the construction job was within the foreseeable zone of danger and, if it proximately caused him injury, the designer would be liable under the principle which imposes liability upon a manufacturer who puts into the circulation a product which, if not carefully made, is likely to cause injury to those who lawfully use it for its intended purpose. . . ." 259 N.C. at 538, 131 S.E. 2d at 606-607.

The court should have instructed the jury on the duty of the manufacturer to exercise reasonable care in adopting a design for its product which would make it safe for the use for which it is intended. In its final mandate the court should apply the law to the evidence by properly instructing the jury to answer the first issue "yes" if plaintiffs had satisfied the jury by the greater weight of the evidence that the defendant was negligent in designing the safety thermostat in the icemaker, and that such negligence proximately caused the fire that damaged plaintiff's property.

We do not discuss the other assignments of error since they may not recur upon retrial.

The judgment is reversed and the cause remanded for a new trial.

New trial.

Judges VAUGHN and HEDRICK concur.