JAMES KEITH SMITH v. FIBER CONTROLS CORPORATION

No. 7922SC151

(Filed 8 January 1980)

1. **Sales § 22— defect in product design—strict liability not applicable**

A manufacturer is not strictly liable for injuries resulting from a defect in product design; rather, a manufacturer's duty to those who use his product is tested by the law of negligence.

2. **Sales § 22— alleged negligent design of machine—improper alteration or maintenance by purchaser—instructions**

In an action to recover for injuries received by plaintiff at his employer's textile plant while trying to unclog a machine designed and manufactured by defendant, the trial court did not err in instructing the jury that a product may be improperly and materially altered, or improperly maintained, by the purchaser so as to relieve the manufacturer of liability for an injury resulting from such improper alteration or maintenance.

Judge WELLS dissenting.

APPEAL by plaintiff from *Hairston, Judge.* Judgment entered 30 September 1978 in Superior Court, IREDELL County. Heard in the Court of Appeals 17 October 1979.

Plaintiff brings this action against the defendant manufacturer to recover for serious injuries to his hand received in trying to unclog a "fine opener" machine at his employer's textile mill. The fine opener was designed and manufactured by defendant. Defendant moved for summary judgment, which was granted in part, and only plaintiff's First Claim for Relief—that defendant was negligent—went to trial. The affidavits presented on the motion reveal the physical circumstances in which the accident occurred, and can be summarized as follows:

Raw fibers are fed into the fine opener between two feeder rollers. Inside the machine is a heavy cylinder covered with sharp, wire-wound teeth, a "beater roller," which spins at a high rate of speed, blending the fiber. The beater roller continues to rotate on its axle for a few minutes after the power to the machine is shut off. The axle of the beater roller extends to the outside of the machine on both ends. One end, on the back side of the machine very close to a wall, is connected to the drive wheel by a pulley. The other end, on the side on which plaintiff ap-

proached the machine, is small and the same dark color as the rest of the machine. The beater roller makes some noise as it continues to turn.

The plaintiff testified at trial that on 6 August 1975 he was 19 years old, and had been employed at Carolina Mills for three months, working at a machine called a "picker." That morning the plant's other fine opener had gotten clogged, and plaintiff had been sent to work on it. The beater roller had stopped moving when he got there, and he had no idea it had "coasted down," as he had no experience with the fine openers. When he subsequently noticed a clog, or "wrap-up," on the feeder rollers of the machine on which he was injured, he told a Mr. Mahaley that he would unstop it if Mahaley would shut the power off. When Mahaley pushed the stop button, "the conveyor belt, the four hoppers, the big arms . . . inside the hoppers, the aprons, a wooden conveyor belt outside the hoppers, and the chains to the feeder rollers, and the feeder rollers stopped moving." Plaintiff "took the fibers on the conveyor belt side of the feeder rollers, . . . and got it [sic] out. I got it off the front side of the feeder rollers . . . . I noticed there was still some wrapped around the feeder rollers and reached in . . . to get that on the back side of the feeder rollers and I just couldn't get my hand out." At the time plaintiff placed his hand over the top of the feeder roller he knew there was a beater roller inside because he had seen the one on the other fine opener that morning, but he did not know the beater roller was continuing to spin. He could not hear the beater roller, since the other machines in the room were very noisy, and he did not know where the roller's axle came out on the side of the machine. There were no warnings of any kind on the machine. When defendant was released from the machine, 30 to 45 minutes later, he was taken to the hospital where most of his hand was amputated.

David Hullett, who designed the fine opener for defendant, testified that he did not design it to comply with the Textile Safety Code of the National Safety Council then in effect. He was not familiar with the use of an interlock to prevent the machine cover from being raised while the cylinder was in motion, and he did not consider the use of any braking device for the cylinder, though such devices were available. At the time he designed the fine opener, Hullett had no background in safety design. The beat-

er roller as designed coasts to a stop some three to four minutes after power to the machine has been cut off.

Gary Robinson, who qualified as an expert in machine guarding, testified that the fine opener in which plaintiff was injured did not meet standards of machine guarding that had been known for many years, because it had no barrier guards, interlock or braking system to prevent access to the moving beater roller. Guards sufficient to make the fine opener safe could have been installed for under $100.

At the close of plaintiff's evidence, defendant moved for a directed verdict, which was denied. Defendant offered no evidence. The jury found that defendant was negligent and that plaintiff was contributorily negligent. Plaintiff appeals.

*Homesley, Jones, Gaines, Dixon & Fields, by Edmund L. Gaines, for plaintiff appellant.*

*James P. Crews and Rodney A. Dean for defendant appellee.*

*The North Carolina Academy of Trial Lawyers, by C. Frank Goldsmith, Jr. and Tim L. Harris, as amicus curiae.*

ARNOLD, Judge.

[1] Plaintiff and amicus curiae argue that contributory negligence should not have been available as a defense in this action, and that defendant should have been held strictly liable. It has long been the rule in North Carolina, however, that a manufacturer's duty to those who use his product is tested by the law of negligence. *See Corprew v. Chemical Corp.,* 271 N.C. 485, 157 S.E. 2d 98 (1967); *Wilson v. Hardware, Inc.,* 259 N.C. 660, 131 S.E. 2d 501 (1963); *Fowler v. General Electric Co.,* 40 N.C. App. 301, 252 S.E. 2d 862 (1979). Any decision that a manufacturer be held strictly liable for injuries resulting from a defect in product design would be a matter of public policy to be decided by the legislature.

Plaintiff also assigns error to the charge to the jury. He argues first that the court erred in failing to give his requested instructions nos. 18 and 19. As to no. 19 we find no error, since there was no evidence to support such an instruction. The plaintiff himself testified that he volunteered to unclog the fine

opener, and his supervisor testified that it was not plaintiff's job to take care of wrap-ups on the fine opener. The evidence, therefore, would not support an instruction that plaintiff was acting at his employer's bidding at the time he was injured.

Requested instruction No. 18 would have called to the jury's attention certain of the surrounding circumstances they could have considered in determining whether plaintiff was contributorily negligent, *e.g.*, plaintiff's age at the time as well as his experience at Carolina Mills, and his knowledge of the fine opener machine. We find no error in the court's failure to give the instruction as requested, since the parts of No. 18 which the jury could appropriately consider were given in substance in the court's charge. *See* 12 Strong's N.C. Index 3d, Trial § 38.1.

[2]  In his next argument plaintiff asserts that the court erred by instructing the jury that the product may be improperly and materially altered, or improperly maintained, by the purchaser so as to relieve the manufacturer of liability for an injury resulting from such improper alteration or maintenance. Plaintiff's position is that such a material alteration or improper maintenance would be a defense by the manufacturer to an action brought by the *purchaser* of the machine, or product, but not as to this plaintiff, the *user* of the machine. The instruction, according to plaintiff, gave defendant manufacturer the improper defense of contributory negligence by the purchaser.

The contested statement of law by the court is correct. Moreover, it was given during the charge as to negligence, an issue which was answered in plaintiff's favor, not contributory negligence. Thus, no prejudicial error to plaintiff can be discerned.

We do not find that the trial court expressed an opinion or incorrectly summarized the evidence in his charge, as plaintiff contends in his arguments 6 and 9. Nor do we find any prejudicial error in plaintiff's remaining assignments of error.

No error.

Judge WEBB concurs.

Judge WELLS dissents.

Smith v. Fiber Controls Corp.

Judge WELLS dissenting.

The facts of this case drive me to the conclusion that there could not have been contributory negligence on the part of the plaintiff because the danger he was exposed to was a hidden danger, the knowledge of which he cannot be charged with. The machine in question was designed in such a way as to conceal the latent danger. The design was such that it in no way furnished warning to plaintiff—and that therefore he could not foresee—that the feeder rollers would continue to turn with force after their source of motive power was cut off.

In the words of Justice Ervin, plaintiff's conduct "must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E. 2d 276, 279 (1951).

By inverse reasoning, my position is supported by *Clark v. Roberts*, 263 N.C. 336, 139 S.E. 2d 593 (1965). There, plaintiff's hand was injured when he inserted it into a corn field chopper. In holding that the plaintiff was guilty of contributory negligence as a matter of law, Justice Parker carefully emphasized that the plaintiff had grown up and worked on a farm and was familiar with the type of machinery by which he was injured; plaintiff knew that the shaft on which the knives were mounted would continue to turn for several minutes after the power was cut off; and that when he put his hand in, he did not know whether the knives were moving or not. In other words, Justice Parker carefully established that the plaintiff in *Clark* was clearly aware of the danger which caused his injury. It is only reasonable to assume that had all the evidence been to the contrary, as it is here—that the plaintiff had no knowledge of the danger—contributory negligence could not have been an issue.

Central to the existence of contributory negligence is knowledge on the part of the plaintiff of the presence of the danger:

In order that the plaintiff's conduct may be contributory negligence . . . the plaintiff must know of the physical condi-

tion created by the defendant's negligence and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved. Furthermore, the plaintiff must intentionally expose himself to this danger. He must have the purpose to place himself within reach of it. It is not enough that his failure to exercise reasonable attention to his surroundings prevents him from observing the danger, or that lack of reasonable preparation or competence prevents him from avoiding it when the condition created by the defendant is [un]known to him.

RESTATEMENT (SECOND) OF TORTS § 466, Comment *c*. Since it is undisputed in the present case that the machine gave no indication from its outward appearance of the danger that lurked within, no reasonable man would have notice of the danger. Therefore, plaintiff cannot, as a matter of law, be charged with exposing himself to the danger.

It is my opinion that the plaintiff here was entitled to an instruction to the jury to answer the issue of contributory negligence in his favor, and that the trial court's failure to so charge constitutes reversible error. I would grant plaintiff a new trial on the sole issue of damages.